Edward E. NISSLEY, Appellant

v.

**CANDYTOWN MOTORCYCLE CLUB, INC. and Richard Bellaman, Appellees.**

Superior Court of Pennsylvania.

Argued Aug. 29, 2006.
Filed Dec. 6, 2006.

Jaime D. Jackson, Lancaster, for appellant.

Steven J. Payne, Philadelphia, for appellee.

BEFORE: LALLY–GREEN, TODD, and POPOVICH, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Edward E. Nissley, appeals from the order of the Court of Common Pleas of Lancaster County dated October 6, 2005, granting summary judgment in favor of Appellees, Candytown Motorcycle Club, Inc. ("Candytown") and Candytown's vice president, Richard Bellaman. We affirm.

¶ 2 The factual and procedural history of the case is as follows. Appellant became a member of Candytown in late 1998 or early 1999. In 2002, Candytown required all new and renewing members to complete an "Application for Membership" that included a "release and indemnity agreement" about halfway down the page. Appellant signed and dated the application. In 2003, Appellant renewed his membership by changing the date on the same form.

¶ 3 On April 6, 2003, Appellant went to Candytown to ride his motorcycle. Bellaman and another individual were engaged in maintenance on the track with a tractor and backhoe. Appellant passed the maintenance equipment about ten to 20 times during the course of the day but continued to ride, despite their presence. For part of the day, a flagman was directing riders around the equipment.

¶ 4 At approximately 4:00 p.m., Appellant rode off of a jump and collided with the tractor driven by Bellaman. There was no flagman warning riders of the tractor's presence. Moreover, it was hidden behind the jump, such that Appellant was unable to see it until after he was airborne. As a result of the collision, Appellant sustained various injuries.

¶ 5 Appellant commenced a lawsuit against Candytown and Bellaman on June 1, 2004, alleging that their negligence caused his injuries. On April 20, 2005, Candytown and Bellaman filed a motion for summary judgment. They argued that Appellant's negligence claim was barred by the exculpatory clause contained in Candytown's membership application.

¶ 6 On October 6, 2005, the trial court granted the motion for summary judgment. The trial court held that the exculpatory clause included unambiguous language that was sufficiently broad to cover Appellant's negligence claim. The trial court also held that even if the exculpatory clause only applied to inherent risks, track maintenance was such an inherent risk, and Appellant had assumed the risk of injury since he was aware of the maintenance equipment's presence and continued to ride. This appeal followed.[1]

---

**1.** It does not appear that the trial court ordered Appellant to file a concise statement of matters complained of on appeal, pursuant to

¶ 7 Appellant raises the following issues on appeal:

1. Whether the trial court erred in ruling that the exculpatory clause in question was unambiguous, where the release from liability was contingent upon the [Appellant] "relying upon [his] own judgment and ability", and a question of fact remains whether, in [Appellant's] own judgment, he knew the risk of danger that gave rise to his accident?

2. Whether the trial court erred by finding that the exculpatory release at issue was enforceable because a collision with a commercial tractor present on a motorcycle racing track simultaneously with riders is an "inherent risk" of motorcycle racing?

Appellant's Brief at 6.

¶ 8 In cases decided by a grant of summary judgment "we are not bound by the trial court's conclusions of law, but rather may reach our own conclusions." *Devine v. Hutt*, 863 A.2d 1160, 1166 (Pa.Super.2004) (citation omitted). This Court "may disturb the trial court's order only upon an error of law or an abuse of discretion." *Id.* Our scope of review is plenary, and we must apply the same standard of review as the trial court. *Id.*

¶ 9 The substantive law relating to the grant of summary judgment is as follows:

On review of an order granting summary judgment, we must determine whether the moving party has established that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. In making this determination, we must examine the record in the light most favorable to the non-moving party, who is entitled to the benefit of all reasonable inferences. All doubts as to the existence of a factual dispute must be re-

Pa.R.A.P. 1925. The trial court filed a Pa.

solved in favor of the non-moving party and the entry of summary judgment is appropriate only in the clearest of cases.

*Moses v. T.N.T. Red Star Express*, 725 A.2d 792, 795–796 (Pa.Super.1999), *appeal denied*, 559 Pa. 692, 739 A.2d 1058 (1999).

I. *Validity of the Exculpatory Clause*

¶ 10 Appellant argues that the trial court erred in granting summary judgment because the exculpatory clause contained in the membership application was ambiguous. Specifically, Appellant claims that the exculpatory clause was not specific enough to warrant a grant of summary judgment as a matter of law. Appellant contends that the trial court should have heard extrinsic evidence in order to determine the scope of the exculpatory clause's application.

¶ 11 Our Supreme Court recently summarized the law with respect to ambiguous contracts as follows:

In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact. . . .

R.A.P. 1925(a) opinion on October 26, 2005.

[T]he question of whether a contract is ambiguous is a question of law. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as this court may review the entire record in making its decision.

*Kripp v. Kripp,* 578 Pa. 82, 849 A.2d 1159 at 1163–1164 & n. 5 (2004) (citations omitted).

¶ 12 The Pennsylvania Supreme Court established the law for interpreting exculpatory agreements in *Employers Liability Assurance Corp. v. Greenville Business Men's Asso.,* 423 Pa. 288, 224 A.2d 620 (1966). The Court held that an exculpatory agreement was valid if: (1) it did not contravene public policy; (2) was between persons and related to their own personal affairs; and (3) the agreement was not a contract of adhesion. *Id.* at 623. Drawing upon its decisions in other cases, it held that the following standards must be met to establish that an exculpatory clause relieves a party of liability: (1) the agreement must be construed strictly since it is not favored by the law; (2) such agreements "must spell out the intention of the parties with the greatest of particularity" and show the intent to release from liability "beyond doubt by express stipulation," because "(n)o inference from words of general import can establish it"; (3) such agreements "must be construed with every intendment against the party who seeks the immunity from liability"; and (4) "the burden to establish immunity from liability is upon the party who asserts such immunity." *Id.*

¶ 13 In *Zimmer v. Mitchell & Ness,* 253 Pa.Super. 474, 385 A.2d 437 (1978) *(en banc), affirmed,* 490 Pa. 428, 416 A.2d 1010 (1980) *(per curiam),* this Court applied these principles to an exculpatory clause contained in a rental agreement for ski equipment. The exculpatory clause provided that: "I furthermore release Mitchell and Ness from any liability for damage and injury to myself or to any person or property resulting from the use of this equipment, accepting myself the full responsibility for any and all such damage or injury." *Id.* at 438. This Court held that the exculpatory clause was valid because the broad language of "any liability" was not ambiguous and included negligence. *See also Topp Copy Products, Inc. v. Singletary,* 533 Pa. 468, 626 A.2d 98 (1993) (affirming the principle that exculpatory clauses are enforceable so long as they are clear and unambiguous, and do not violate public policy).

¶ 14 In the present case, the exculpatory agreement that Appellant signed read as follows:

THIS IS A RELEASE AND INDEMNITY AGREEMENT
READ IT BEFORE SIGNING

I hereby make application for membership in the CANDYTOWN MOTORCYCLE CLUB. If accepted, I agree to fulfill the obligations of membership and to follow the Club Constitution and By-laws. I hereby give up all my rights to sue or make claim against the CANDYTOWN MOTORCYCLE CLUB, INC. the American Motorcyclist Association, the American All Terrain Vehicle Association and all other persons or organizations connected with the club for any injury to property or person I may suffer, including crippling injury or death, whether such injury arises while I am upon the premises. I know the risks of danger to myself and my property while upon the club property and, relying upon my own judgment and ability, assume all such risks of loss and hereby agree to reimburse all costs to those persons or organizations connected with

this club for damages incurred as a result of any injury that I cause or receive.

THIS     IS     A     RELEASE

_____

Parent/Guardian Signature

Such language, while not identical to that used in *Zimmer*, establishes the same clear intention to release all claims for injuries sustained while participating in the relevant activity. There is no ambiguity in such a clear statement as "I hereby give up all my rights to sue or make claim."

¶ 15 Appellant, however, argues that the exculpatory clause is ambiguous because the agreement contained the following sentence:

I know the risks of danger to myself and my property while upon the club property and, **relying upon my own judgment and ability,** assume all such risks of loss and hereby agree to reimburse all costs to those persons or organizations connected with this club for damages incurred as a result of any injury that I cause or receive.

Release and Indemnity Agreement (emphasis added). Appellant argues that a reasonable interpretation of this clause would be that the agreement only applies to those risks contemplated by him when he signed the agreement. Specifically, he argues:

One reasonable interpretation of the relevant language contained in the release is that liability is released only in instances where [Appellant], using his own judgment and ability, reasonably should have known of the risks of danger that were present. Thus, the issue becomes whether [Appellant] should have been aware at the time that he signed the release in January 2002, that more than a year later, he would assume a risk of colliding with a commercial maintenance tractor on the racing track. The releas-

ing language is contingent upon what [Appellant] knew to be the risks, **relying upon his own judgment.** But what, in [Appellant's] judgment, at that time, was a known risk of loss? This is a question of fact.

Appellant's Brief at 16.

¶ 16 Respectfully, we cannot agree. The exculpatory clause explicitly states that the signer is giving up all rights to sue. Thus, a reasonable person would have understood, from the very beginning, that he was waiving all rights to bring a claim, without qualification.

¶ 17 The sentence that Appellant cites appears **after** this broad waiver, and could only be interpreted as a separate indemnification clause. Rather than referring to the signer's right to bring a claim, this sentence states that the signer must **reimburse** costs incurred by Candytown, or those connected to it, as a result of the signer's actions. Such an indemnification clause would only be applicable where Candytown incurred costs as a result of Appellant's injuries. This indemnification clause applies to a separate fact pattern from the separate exculpatory clause and, as a result, could not reasonably be read to modify the exculpatory clause.

¶ 18 It is also clear that Candytown intended to provide for this separate indemnification clause since the title of the agreement provided it was a "release **and** indemnity agreement" (emphasis added). The title also would have indicated to a reasonable person that the agreement contained separate provisions. As such, while the sentence that Appellant cites could lead to some ambiguity with respect to the indemnification clause, it could not be interpreted as creating ambiguity with respect to the exculpatory clause. Thus, this claim fails.

## II. *Assumption of the Risk*

¶ 19 Appellant also argues that the trial court erred when it held that summary judgment was appropriate because Appellant assumed the risk of a collision. Specifically, the trial court reasoned that a collision with a maintenance tractor was an inherent risk of motorcycle racing. Appellant argues that colliding with a maintenance tractor was not an inherent risk of motorcycle racing. In the alternative, Appellant claims that this was at least a question of fact, such that the issue could not properly be decided as a matter of law.

¶ 20 We need not decide this issue. In general, and where applicable, the assumption of the risk doctrine bars a plaintiff from recovering in tort for risks inherent to a certain activity. *See, e.g.,* 42 Pa.C.S.A. § 7102(b.3).[2] In contrast, the explicit, broad, and valid language of the exculpatory clause bars **all** claims, regardless of whether they arise from an inherent risk. Because the release in this case is broader in scope than the assumption of the risk doctrine, we need not decide whether the doctrine applies.

¶ 21 Thus, we conclude that the trial court unnecessarily addressed the assumption of the risk doctrine. Nevertheless, the trial court's final decision to grant summary judgment to Candytown and Bellaman was correct. Accordingly, we affirm the trial court's order. *Wilson v. Transp. Ins. Co.,* 889 A.2d 563, 577 n. 4 (Pa.Super.2005) ("we can affirm the trial court's decision on any valid basis, as long as the court came to the correct result, which in this case was to deny Appellant relief.")

¶ 22 Order affirmed.

**2.** In *Hughes v. Seven Springs Farm, Inc.,* 563 Pa. 501, 762 A.2d 339 (2000) our Supreme Court declared:

> As a general rule, the doctrine of assumption of the risk, with its attendant 'complexities' and 'difficulties,' *see, generally, Howell v. Clyde,* 533 Pa. 151, 620 A.2d 1107 (1993) (Opinion Announcing the Judgment of the Court by Flaherty, J.), has been supplanted by the Pennsylvania General Assembly's adoption of a system of recovery based on comparative fault in the Comparative Negligence Act. 42 Pa.C.S. § 7102(a)-(b).

*Hughes,* 762 A.2d at 341. The Court recognized that by statute, the doctrine of voluntary assumption of the risk remains in effect for cases involving downhill skiing. *Id.,* citing 42 Pa.C.S.A. § 7102(c) (Skiers' Responsibility Act). *See also Loughran v. Phillies,* 888 A.2d 872 (Pa.Super.2005) (reviving and recognizing some form of the assumption of the risk doctrine for cases involving baseball), appeal denied, 588 Pa. 783, 906 A.2d 543 (Pa., Aug.

8, 2006), *citing Romeo v. The Pittsburgh Associates,* 787 A.2d 1027 (Pa.Super.2001) (same).

After our Supreme Court decided *Hughes,* the Legislature passed two amendments to the Comparative Negligence Act. The first amendment was the Fair Share Act, Act 2002, June 19, P.L. 394, No. 57, § 2. This amendment added subsections (b.1) and (b.2) to § 7102. Our Supreme Court recently affirmed the Commonwealth Court's ruling that the Fair Share Act is unconstitutional and void. *Deweese v. Cortes,* 588 Pa. 738, 906 A.2d 1193 (2006), *affirming DeWeese v. Weaver,* 880 A.2d 54 (Pa.Cmwlth.2005).

The second amendment was Act 2004, July 15, P.L. 736, No. 87. This amendment added subsection (b.3), which specifically applies the assumption of the risk doctrine to off-road vehicle driving. Appellant was engaged in off-road vehicle driving at the time of his injury. Thus, if Appellant had not signed a valid release, it would have been necessary to determine the applicability of § 7102(b.3).