J-A29006-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| JOSEPH M. BELLICONISH, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| FUN SLIDES CARPET SKATE PARK AND | : | |
| PARTY CENTER, LLC, SIMTEC, CO., | : | |
| AND DONALD V. EDWARDS AND | : | |
| LORETTA EDWARDS, ADULT | : | |
| INDIVIDUAL PERSON, | : | |
| | : | |
| Appellees | : | No. 262 WDA 2014 |

Appeal from the Order entered October 3, 2013,
Court of Common Pleas, Westmoreland County,
Civil Division at No. 6597 of 2012

BEFORE: DONOHUE, ALLEN and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.: **FILED NOVEMBER 26, 2014**

Joseph M. Belliconish ("Belliconish") appeals from the order entered on October 3, 2013 by the Westmoreland County Court of Common Pleas, granting summary judgment to Fun Slides Carpet Skate Park ("Fun Slides"), Simtec Co. ("Simtec"), and Donald and Loretta Edwards ("the Edwards") (together "Appellees"). For the reasons set forth herein, we affirm.

A summary of the relevant facts and procedural history are as follows. On November 19, 2011, Belliconish, his wife, Tracy, and her two children, visited Fun Slides located in Irwin, Pennsylvania. "Fun Slides […] is an indoor skate park and party center open to both children and adults where participants use smooth plastic skates strapped onto their shoes and skate in

---

*Retired Senior Judge assigned to the Superior Court.

a black light environment that includes carpeted ramps, jumps, and rails."
Trial Court Opinion, 10/3/13, at 2. In order to engage in carpet skating at
Fun Slides, participants are required to sign an Assumption of Risk, Waiver
of Liability and Indemnification Agreement. Fun Slides employs two waiver
forms: one form is intended for a parent/guardian to sign on behalf of a
minor child; the other form is intended for adults. Both forms are identical
aside from language in the form intended for minor children, which provides
that the parent is signing on behalf of the minor child and himself or herself.
For reasons unknown, Belliconish signed an Assumption of Risk, Waiver of
Liability and Indemnification Agreement form intended for minor children
(the "Waiver").

As this was Belliconish's first visit to Fun Slides, he began skating
down smaller ramps to familiarize himself with the activity. Belliconish, who
had experience with roller skating and skateboarding, did not have any
problems balancing as he skated down the ramps and gradually worked his
way to other, more challenging ramps. After approximately one hour of
skating, Belliconish attempted to skate down a narrow, elevated ramp
positioned between two regular ramps. Belliconish lost control on this ramp,
fell off, and fractured his left patella. As a result, Belliconish required
surgery and physical therapy.

On November 2, 2012, Belliconish filed a complaint against Appellees,
alleging a single cause of action for negligence. He testified at a deposition

held on April 8, 2013. On June 6, 2013, Appellees filed two nearly identical motions for summary judgment presenting two arguments: (1) Belliconish signed [the Waiver], releasing Fun Slides from liability for any injuries, and (2) Appellees owed "no duty of care to warn, protect or insure against inherent risks in a voluntary recreational activity such as carpet skating." Fun Slides' Motion for Summary Judgment, 6/4/13, at 2-3; Simtec and the Edwards' Motion for Summary Judgment, 6/4/13, at 3.

The trial court held oral argument on the motions for summary judgment on September 18, 2013. The trial court granted Appellees' motions for summary judgment in a written opinion filed on October 3, 2013. On February 7, 2014, Belliconish filed a motion for leave to file an appeal *nunc pro tunc*. Belliconish argued that the trial court did not mail the October 3, 2013 order to his counsel, mailing it instead to an address that counsel had not used for over 10 years. As a result, Belliconish's counsel did not receive a copy of the order until December 20, 2013. The trial court granted Belliconish's motion on February 7, 2014. Belliconish then filed a notice of appeal to this Court on February 13, 2014.

On appeal, Belliconish presents the following issues for our review:

> 1. Whether an [i]ndemnification [a]greement apparently signed on behalf of an unnamed minor person should be construed as applying to a claim filed by an adult [p]laintiff for injuries suffered by him?
>
> 2. Whether a dangerous condition was so open and obvious that [Belliconish's] voluntary participation

>     in carpet skating would constitute [a] preliminary
>     and deliberate decision to undertake the specific
>     risk?

Belliconish's Brief at 4.

Our standard of review of a trial court's decision to grant a motion for summary judgment is well settled:

>     A reviewing court may disturb the order of the trial
>     court only where it is established that the court
>     committed an error of law or abused its discretion.
>     As with all questions of law, our review is plenary.
>
>     In evaluating the trial court's decision to enter
>     summary judgment, we focus on the legal standard
>     articulated in the summary judgment rule. Pa.R.C.P.
>     1035.2. The rule states that where there is no
>     genuine issue of material fact and the moving party
>     is entitled to relief as a matter of law, summary
>     judgment may be entered. Where the non-moving
>     party bears the burden of proof on an issue, he may
>     not merely rely on his pleadings or answers in order
>     to survive summary judgment. Failure of a non[-
>     ]moving party to adduce sufficient evidence on an
>     issue essential to his case and on which it bears the
>     burden of proof establishes the entitlement of the
>     moving party to judgment as a matter of law. Lastly,
>     we will view the record in the light most favorable to
>     the non-moving party, and all doubts as to the
>     existence of a genuine issue of material fact must be
>     resolved against the moving party.

**Thompson v. Ginkel**, 95 A.3d 900, 904 (Pa. Super. 2014) (citing **J.P. Morgan Chase Bank, N.A. v. Murray**, 63 A.3d 1258, 1261-62 (Pa. Super. 2013)).

For his first issue on appeal, Belliconish argues that the Waiver "should not be construed as a waiver of liability as to his own injuries" because the

- 4 -

form was intended for minors. Belliconish's Brief at 9-10. Belliconish asserts that the contract language must be strictly construed or at least considered to be ambiguous and construed against Appellees as the parties seeking immunity from liability. *Id.* at 10-12.

The trial court found this argument to be meritless. Specifically, the trial court found that the Waiver, although intended for minors, included language releasing Belliconish from any claims against Appellees, quoting a portion of the agreement that states:

> In consideration of being permitted to participate in the sport of carpet skating and activities of Fun Slides today and on all future dates, I, (the minor participate [*sic*] and Parent/Guardian), **on behalf of myself**, my minor participant, my spouse, my heirs, personal representatives, and assigns, hereby release, discharge, and covenant not to sue Fun Slides, Simtec Co., …from all liability, claims, demands, losses, or damages.[]

Trial Court Opinion, 10/3/13, at 6 (emphasis in original) (quoting Belliconish's Exhibit A).

The trial court further found that "the signature of [Belliconish] on said Waiver [] form for a Minor indicates that he was signing for himself." *Id.* at 7.

> There is no name of a child-participant on the form, [Belliconish] handwrote his own date of birth and his own address, and indicated that his emergency contact was his wife, indicating her name and mobile phone number. It is clear to the [c]ourt that he was signing the form for himself and his own participation in carpet skating on the date of the incident. The language of the Waiver [] is clear and unambiguous.

*Id.* The trial court concluded that the Waiver was valid and enforceable, and therefore barred Belliconish's lawsuit. *Id.*

This Court previously addressed the validity of waivers and releases, stating:

> Exculpatory documents releasing a party in advance for that party's own negligence are not favored in Pennsylvania and are strictly construed. It is generally accepted that an exculpatory clause is valid where three conditions are met. First, the clause must not contravene public policy. Secondly, the contract must be between persons relating entirely to their own private affairs and thirdly, each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion.

*Gillingham v. Consol Energy, Inc.*, 51 A.3d 841, 852 (Pa. Super. 2012) (citations and quotation omitted).

In this case, the Waiver, which was a condition precedent to Belliconish's ability to participate in a recreational activity, does not contravene public policy. This Court has held that exculpatory clauses "violate public policy only when they involve a matter of interest to the public or the state." *Seaton v. East Windsor Speedway, Inc.*, 582 A.2d 1380, 1382 (Pa. Super. 1990) (citing *Leidy v. Deseret Enterprises, Inc.*, 381 A.2d 164, 167 (Pa. Super. 1977)). "Such matters of interest to the public or the state include the employer-employee relationship, public service, public utilities, common carriers, and hospitals." *Id.* at 1382-83. As the Waiver in this case does not involve a matter implicating such broad

public concern, we find that the Waiver is not a matter of interest to the public or state and accordingly, does not violate public policy. The second condition is also satisfied in this instance, as the Waiver constitutes an agreement between private parties relating to private affairs.

With regard to the third condition, this Court has held that "[a]n adhesion contract is 'a standard-form contract prepared by one party, to be signed by the party in a weaker position, [usually a] consumer, who has little choice about the terms.'" *State Farm Fire & Cas. Co. v. PECO*, 54 A.3d 921, 935 (Pa. Super. 2012) (citing BLACK'S LAW DICTIONARY 318-19 (7th ed. 1999)). Although Fun Slides required Belliconish to sign a standard form contract that it prepared in order to allow participation in the activity it offered, Pennsylvania case law establishes that the Waiver was not a contract of adhesion as the Waiver related to the voluntary participation in a recreational activity. "[This Court] has cogently expressed why voluntary sporting or recreational activities may be viewed differently from other activities that require execution of exculpatory contracts[,]" explaining that in these instances,

> [t]he signer is under no compulsion, economic or otherwise, to participate, much less to sign the exculpatory agreement, because it does not relate to essential services, but merely governs a voluntary recreational activity. The signer is a free agent who can simply walk away without signing the release and participating in the activity, and thus the contract signed under such circumstances is not unconscionable.

***Chepkevich v. Hidden Valley Resort, L.P.***, 2 A.3d 1174, 1190-91 (Pa. 2010) (citations omitted).  In this case, Belliconish voluntarily signed the Waiver in order to participate in the recreational activity of carpet skating. We therefore conclude that the Waiver does not constitute a contract of adhesion and is valid.

Belliconish argues that the language in the Waiver is not clear and "even though signed by Belliconish, should not be construed as a waiver of liability as to his own injuries."  Belliconish's Brief at 10.  Belliconish instead asserts that the Waiver, strictly construed, does not apply to his injuries because the Waiver was intended to apply to liability for injuries to a minor rather than an adult. Thus, he argues, "it is best understood that the parties did not intend that he waive liability[,]" and the language in the Waiver should be construed against Appellees.  ***Id.*** at 11-12.

Belliconish is correct that a valid exculpatory clause "will, nevertheless, still be unenforceable unless the language of the parties is clear that a person is being relieved of liability for his own acts of negligence."  ***Id.*** at 1189 (citing ***Dilks v. Flohr Chevrolet***, 192 A.2d 682, 687 (Pa. 1963)).  The law for interpreting exculpatory agreements provides that an exculpatory clause must meet the following standards to relieve a party of liability:

> (1) the agreement must be construed strictly since it is not favored by the law; (2) such agreements 'must spell out the intention of the parties with the greatest of particularity' and show the intent to release from liability 'beyond doubt by express stipulation,' because '(n)o inference from words of

general import can establish it'; (3) such agreements 'must be construed with every intendment against the party who seeks the immunity from liability'; and (4) 'the burden to establish immunity from liability is upon the party who asserts such immunity.'

*Nissley v. Candytown Motorcycle Club, Inc.*, 913 A.2d 887, 890 (Pa. Super. 2006) (citing *Employers Liability Assurance Corp. v. Greenville Business Men's Asso.*, 224 A.2d 620, 623 (Pa. 1966)). With these standards in mind, we address Belliconish's argument that the Waiver does not relieve Appellees of liability.

This Court has held that "[w]hen interpreting the language of a contract, the intention of the parties is a paramount consideration." *State Farm Fire & Cas. Co.*, 54 A.3d at 928 (citing *Thomas Rigging & Constr. Co., Inc. v. Contraves, Inc.*, 798 A.2d 753, 755 (Pa. Super. 2002)).

In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While ambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact….

**Nissley**, 913 A.2d at 889 (citing **Kripp v. Kripp**, 849 A.2d 1159, 1163-64 (Pa. 2004)).

In this case, we conclude that the language of the Waiver, strictly construed, is unambiguous and enforceable. Although the form addresses minor participants and parent/guardians, the language specifically releases Appellees from liability of claims by the person who **signs** the Waiver. The Waiver provides seven separate paragraphs, including one for waiver of liability for ordinary negligence, which provides:

> In consideration of being permitted to participate in the sport of carpet skating and activities of Fun Slides today and on all future dates, **I, (the minor participant and Parent/Guardian)**, on behalf of myself, my minor participant, my spouse, my heirs, personal representatives, and assigns, hereby **release, discharge, and covenant not to sue Fun Slides**, SIMTEC CO., its respective administrators, directors, agents, officers, officials, agents, employees, volunteers, other participants, sponsoring agencies, sponsors, advertisers, and if applicable, the owners and lessors of premises used to conduct the skating activities, (each considered one of the "Releasees" herein) **from all liability, claims, demands, losses, or damages** caused or alleged to have been caused in whole or in part **by the ORDINARY NEGLIGENCE** of the Releasees (including negligent rescue operations).
> This agreement applies to 1) personal injury (including death) from incidents or illnesses arising from participation at Fun Slides (including, but not limited to active participation, classes, observation, individual use of facilities or equipment, locker room area, and all premises including the associated sidewalks and parking lots; 2) any and all claims resulting from the damage to, loss of, or theft of property; and 3) the right to sue for loss suffered by the participant, the parents, or the guardians.

Fun Slides' Brief in Support of Motion for Summary Judgment, 6/4/13,

Exhibit A at 1 (Assumption of Risk, Waiver of Liability, and Indemnification

Agreement) (emphasis in original).

Additionally, the end of the Waiver provides an "Acknowledgement of

Understanding" clause, which provides:

> I, (the minor participant and Parent/Guardian), have read this Assumption of Risk, Waiver of Liability, and Indemnification Agreement and fully understand its terms. I understand that I am giving up substantial rights, including my right to sue. I further acknowledge that I am signing the agreement freely and voluntarily, and intend my signature to be a complete and unconditional release of all liability due to ordinary negligence by Fun Slides or the inherent risks of the activity, to the greatest extent allowed by law in the State of Pennsylvania.

*Id*. at 2.

Strictly construed, under the language of the Waiver, the signer of the

Waiver agrees to release Appellees from all liability due to ordinary

negligence. Despite the inclusion of the term "minor participant," there is no

ambiguity in the language of the Waiver that the signer, in his or her

individual capacity, is releasing Appellees "from all liability, claims, demands,

losses, or damages caused or alleged to have been caused in whole or in

part by the ordinary negligence of the [Appellees]."

Contrary to Belliconish's assertion, there is no support for a finding

that the language only waives liability for injuries the minor participant

might suffer and any claim the parent/guardian may have as a result of an

- 11 -

injury to the minor participant. **See** Belliconish's Brief at 11. Rather, the language is clear that the waiver of liability applies broadly to "personal injury (including death) from incidents or illnesses arising from participation at Fun Slides" incurred by the signer of the waiver and the minor child. Fun Slides' Brief in Support of Motion for Summary Judgment, 6/4/13, Exhibit A at 1 (Assumption of Risk, Waiver of Liability, and Indemnification Agreement). As a result, we conclude that the language of the waiver of liability, strictly construed, is unambiguous and applies to Belliconish's claim regarding the injuries he sustained.

Furthermore, even if the language of the Waiver was ambiguous, the admission of parol evidence, "to explain or clarify or resolve the ambiguity," would demonstrate that Belliconish intended to sign the Waiver on his own behalf and release Appellees from liability. **See Nissley**, 918 A.2d at 889 (citing **Kripp**, 849 A.2d at 1163-64) ("When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances.").

When presented with a copy of the Waiver, Belliconish identified the document as "the contract that I signed." Fun Slides' Brief in Support of Motion for Summary Judgment, 6/4/13, Exhibit B at 76 (Deposition of Belliconish). Although Belliconish claims that he did not read the Waiver before he signed it, he admitted that he skimmed through the Waiver,

recognized it to be a waiver of liability, and understood that a waiver of liability means that "there may be, you know, some kind of risk." *Id.* at 76-78. Belliconish further admitted that he never had "any reason to believe that [he] would not be bound by the terms of [the Waiver] when [he] signed it." *Id.* at 166.

Even more demonstrative of Belliconish's intent to sign the Waiver on his own behalf, however, is the uncontested evidence that Belliconish handwrote his name, date of birth, and address on the Waiver, did not include the name of a child-participant, and indicated that his wife was his emergency contact. Fun Slides' Brief in Support of Motion for Summary Judgment, 6/4/13, Exhibit A at 2 (Assumption of Risk, Waiver of Liability, and Indemnification Agreement). Moreover, Appellees presented evidence of signed waivers for Belliconish's stepson and stepdaughter, establishing that his wife signed waivers on behalf of the minors. *See* Fun Slides' Brief in Support of Motion for Summary Judgment, 6/4/13, Exhibit B at Exhibit 3. Thus, there is no evidence that Belliconish intended to sign the Waiver for anyone but himself.

Viewing the evidence in the light most favorable to Belliconish, we conclude that the parties understood and intended the Waiver to be a waiver of liability for any injuries sustained by Belliconish as a result of ordinary negligence on Appellees' behalf. We therefore conclude that Belliconish waived his claim to liability for the injuries he sustained. Accordingly, the

trial court did not commit an error of law or abuse its discretion in granting

Appellees' motions for summary judgment.[1]

Order affirmed.

Judgment Entered.

_[signature]_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/26/2014

---

[1] Because Belliconish waived his claim to seek liability against the Appellees for their negligence and Belliconish only plead claims based upon their negligence, we need not address his second claim on appeal that the trial court erred in granting summary judgment based on the "no-duty" doctrine or assumption of risk.