J-A05020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ABIGAIL MULLER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| THE AQUATIC AND FITNESS CENTER D/B/A AFC JENKINTOWN, AQUA HAB, L.P. D/B/A THE AQUATIC AND FITNESS CENTER AT JENKINTOWN, AQUA HAB, L.P. AND KYLE DONAHUE, | |
| Appellees | No. 1636 EDA 2014 |

Appeal from the Order entered April 15, 2014,
in the Court of Common Pleas of Philadelphia County,
Civil Division, at No(s): October Term, 2012 No. 0667

BEFORE: GANTMAN, P.J., SHOGAN, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.: **FILED MARCH 09, 2015**

Abigail Muller, ("Appellant"), appeals from the trial court's order granting summary judgment in favor of The Aquatic and Fitness Center d/b/a AFC Jenkintown, Aqua Hab, L.P. d/b/a The Aquatic and Fitness Center at Jenkintown, Aqua Hab, L.P. and Kyle Donahue, ("Gym" and "Donahue"). We affirm.

The trial court detailed the factual and procedural background relative to this action as follows:

> [Appellant] joined [Gym] as a member in 2004 and at that time signed a Membership Application/Contract. Directly above the signature line, the Contract contained the following language under the heading "Notice":

Any holder of this contract or not [sic] is subject to tall [sic] claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor shall not exceed amounts paid by the debtor [sic] hereunder. I/we accept full responsibility for my/our use of any and all apparatus, appliance, facility, privilege, or service whatsoever, owned and operated by the Aquatic and Fitness Center at Jenkintown, or while engaging in any contest, game, function, exercise, either on or off the Aquatic and Fitness Center at Jenkintown Premises, shall do so at my own risk, and shall hold The Aquatic and Fitness Center at Jenkintown, its partners, shareholders, directors, officers, employees, representatives, and agents, harmless from any and all loss, claim, injury, damage, or liability sustained or incurred by me/us, resulting from any act or omission of an officer, employee, representatives, owners and agents and/or any of the affiliated companies hereunder in respect of any such loss, cost, claim, injury, damage or liability sustained or incurred by using The Aquatic and Fitness Center at Jenkintown.

Despite having signed her name at the bottom of the contract, and although she did not suggest that she was forced or rushed while signing the contract, [Appellant] did not read the contract. [Appellant] remained a member of the Aquatic and Fitness Center for the next several years and on May 26, 2011 entered into an additional contract called a Personal Training Agreement for a series of personal training sessions with [Donahue]. That contract contained the provision:

I acknowledge that there are risks involved in any physical training program and that some of the equipment used in a training program may also have inherent risks. I accept full responsibility for any accidents and/or injuries that may be a direct or indirect result of the equipment that is provided by The Aquatic and Fitness Center or by one of the personal trainers operating on its premises. It is my choice to participate in a physical training program and I release The Aquatic & Fitness Center and any personal trainer operating on its premises from all liabilities.

[Appellant] initialed several paragraphs on this one-page document and signed and dated the bottom. [Appellant] does not recall having read this contract prior to signing it. On May 31, 2011, [Appellant], who was at that time 59 years old, attended a personal training session with Donahue. While performing a plank exercise under Donahue's direction in which she was to rotate her right arm and torso vertically while keeping her left arm on a bench, [Appellant's] shoulder dislocated. [Appellant] claims that she is now prone to subsequent shoulder dislocation, has needed surgery, and will most likely need additional surgery including possibly a joint replacement procedure.

Trial Court Opinion, 4/15/14, at 1-2.

Appellant initiated her action against Gym and Donahue on October 4, 2012. In due course, following the resolution of preliminary objections, the trial court's denial of Gym's and Donahue's motion for judgment on the pleadings, and at the conclusion of discovery, Gym and Donahue filed a motion for summary judgment on February 3, 2014. On March 6, 2014, Appellant filed her answer in opposition to Gym and Donahue's motion for summary judgment. On April 9, 2014, the trial court issued an order and memorandum opinion granting summary judgment in favor of Gym and Donahue. The trial court's April 9, 2014 order was entered on the docket on April 15, 2014. On May 2, 2014, Appellant moved for reconsideration, claiming for the first time that the contracts violated the Pennsylvania Health Club Act, ("HCA"), and the Pennsylvania Plain Language Consumer Contract Act ("PLCCA"). On May 14, 2014, the trial court denied Appellant's motion for reconsideration. On May 14, 2014, Appellant filed a notice of appeal. The trial court did not order compliance with Pa.R.A.P. 1925(b).

Appellant presents the following issues for our review:

QUESTION NO. 1: Did the trial court err as a matter of law when it concluded the exculpatory clauses, drafted by [Gym], spelled out the intention of the parties with the greatest of particularity and put it beyond doubt, by express stipulation, the intention of [Appellant] that [Gym] would be exculpated from responsibility for their own negligence?

QUESTION NO. 2: Did the trial court err as a matter of law when it failed to view the evidence and the reasonable inferences therefrom in a light most favorable to [Appellant] and failed to conclude there was an issue of fact as to whether the exculpatory clauses were conspicuous and obvious such that they should have engaged the attention of a reasonable person that she was waiving important legal rights when she signed her gym membership and personal training agreement?

QUESTION NO. 3: Did the trial court err as a matter of law when it concluded the exculpatory clauses were valid and enforceable even though the terms of the Membership Application/Contract violated the Pennsylvania Health Club Act?

QUESTION NO. 4: Did the trial court err as a matter of law when it concluded that the exculpatory clauses were valid and enforceable even though they violated Pennsylvania public policy as expressed by the General Assembly in the Pennsylvania Plain Language Consumer Contract Act?

QUESTION NO. 5: Did the trial court err as a matter of law and fail to consider the record evidence in a light most favorable to [Appellant] when it concluded that the contracts containing the exculpatory clauses were not contracts of adhesion in the face of record evidence that [Gym] had never negotiated, modified, or altered the exculpatory clauses in the Membership Application?

Appellant's Brief at 3-4.

All of Appellant's issues challenge the trial court's grant of summary judgment in favor of Gym and Donahue based on the trial court's interpretation of the agreements between the parties, including the

exculpatory language contained therein. We will therefore address Appellant's issues together.

We recognize:

> Our scope of review … [of summary judgment orders] … is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Thus a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

***Alexander v. City of Meadville,*** 61 A.3d 218, 221 (Pa. Super. 2012) (internal citation omitted).

Here, the trial court explained in great detail:

> When evaluating exculpatory clauses, which are not favored in the law, courts construe the clauses strictly and against the party asserting their validity. *Zimmer v. Mitchell &*

*Ness,* 385 A.2d 437, 439 (Pa. Super. 1978) *aff'd* 416 A.2d 1010 (1980). The enforceability of exculpatory clauses in contracts has been addressed by the Pennsylvania Supreme Court:

> It is generally accepted that an exculpatory clause is valid where three conditions are met. First, the clause must not contravene public policy. Secondly, the contract must be between persons relating entirely to their own private affairs and thirdly, each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion ... once an exculpatory clause is determined to be valid, it will, nevertheless, still be unenforceable unless the language of the parties is clear that a person is being relieved of liability for his own acts of negligence.

> In interpreting such clauses we listed as guiding standards that: 1) the contract language must be construed strictly, since exculpatory language is not favored by the law; 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties; 3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and 4) the burden of establishing the immunity is upon the party invoking protection under the clause.

*Chepkevich v. Hidden Valley Resort, L.P.*, 607 Pa. 1, 2 A.3d 1174, 1189 (Pa. 2010). At no point does [Appellant] appear to argue that enforcing an exculpatory clause in this situation would contravene public policy, nor does [Appellant] suggest that this matter is not entirely between private parties. [FN2: On Page 15 of [Appellant's] Memorandum of Law, [Appellant] notes that the clauses violate public policy, but does not unpack this assertion except to argue that the clauses are contracts of adhesion.]

As a preliminary matter, this Court notes that [Appellant] did not read either of the contracts that she signed (or, at the very least, does not remember having read them). Pennsylvania courts have consistently held that one about to sign a contract is duty bound to read it. *Leuten Brick Co. v. Killen,* 83 A. 576 (1912). Failure to read a contract before signing it cannot be used to justify avoidance, modification, or nullification of any part of a contract. *In re Estate of Olson,* 291 A.2d 95, 97 (Pa.

1972).  Therefore, to the extent [Appellant] seeks to be deemed exempt from the terms of the contract she signed on the basis of her failure to read the contract, she may not do so.  [FN3: Although [Appellant] notes that she was not specifically given time to read the contract, at no point does she argue that she signed the contract under duress, or that her feeling of being rushed could be the basis for invalidating the exculpatory clause.]

First, [Appellant] argues that whether or not the contracts are ones of adhesion, they are ambiguous and fail to meet the drafting requirements outlined in *Beck-Hummel v. Ski Shawnee, Inc.*, 902 A.2d 1266 (Pa. Super. 2006).  Finding guidance in the case law relating to warranty disclaimers under Pennsylvania's Uniform Commercial Code, the Superior Court held that the following factors are relevant in determining whether a reasonable person should have noticed a disclaimer:  (1) the disclaimer's physical placement in the document; (2) the size of the disclaimer's print; and (3) whether the disclaimer was highlighted by being printed in all capital letters or in a type or size or color different from the remainder of the document.  *Beck-Hummel* at 1274.

This Court first observes that the clause at issue in the Membership Agreement is near the end of the document, directly above where a new member is expected to sign and date.  Therefore, a new member's eyes, by definition, must fall at or near the disclaimer.  This is directly distinguishable from the clause at issue in *Beck-Hummel*, which was printed on the back of a ski lift ticket.  Here, [Appellant] was presented with two documents, each of which serves no other purpose than to be a contract between the parties; the documents are clearly labeled "Contract" and "Agreement."  [Appellant] therefore was aware that a contract existed, and that a contract is what she was signing.  This Court therefore finds that the placement of the clause in this case is such that a reasonable person ought to notice it, as it is mere inches from the space where a new member expressly indicates his or her assent to the contract.  [FN4:  This Court also notes that the paragraph before the exculpatory clause, relating to the Buyer's Right to Cancel, is required by law to be "in immediate proximity to the space reserved in the contract for the signature of the buyer" and in ten point font.  73 P.S. §201-7.  Even with this requirement in mind, [Gym and Donahue] placed the exculpatory clause even closer to the signature line than the Right to Cancel notice.  This

requirement reflects the Legislature's recognition that the space immediately above the signature line is a space where a reasonable person ought to be looking when they are reading and signing the contract.]

Similarly, the placement of the exculpatory clause in the Personal Training Agreement is placed inches above the signature line, and is placed such that it falls directly under a set of bullet points that are indented. The entire document is one page, and in bold italics at the top is the statement "The following details are important guidelines, which will allow you to get the most out of your Personal Training Sessions." [Appellant] signed her name and dated the document in a space right below the sentence. [Appellant] argues that the font size of the disclaimer here is not sufficiently large to pass the drafting requirements of *Beck-Humme*l. This Court disagrees. Even using the images [Appellant] has clearly shrunken, copied, and pasted into the body of her Memorandum of Law, the language is readable. The text at issue is neither bigger nor substantially smaller than the language in the rest of the contracts, and this Court is unaware of any case that renders an exculpatory clause unenforceable solely on the basis of font size. [FN5: The Membership Agreement, when presented as an exhibit, is a little less than the size of a standard piece of paper. The image of the contract as it appears in the body of [Appellant's] Memorandum of Law (in the section of the Memorandum in which font size is discussed) is 5.75" by 5.3, and appears to be a poor quality image with visual background noise. [Appellant] has also reduced the size of the Personal Training Agreement to 5.5" by 4.3" in the body of her memorandum, where the actual size of the document is that of a standard sheet of paper. The language of both clauses is still readable.]

As to whether the disclaimer is highlighted, this Court notes that the Membership Contract, as a whole, is divided into several sections, and that the exculpatory clause is under the heading "Notice", which in bold font, and is the only bold font center-justified heading in the document. This Court also finds that the word "Notice", in bold font, is sufficiently clear such that it would inform a reader of a Contract she was about to sign that she was being put on notice of something.

The clause in the Personal Training Agreement is also prominent enough such that a reasonable person would see and read the language. It is the first paragraph in the document that

is not part of the bullet-point list and thus appears to be visually distinguishable from the remainder of the document. The paragraph contains only sentences that have to do with the fact that the reader is releasing "The Aquatic and Fitness Center and any personal trainer" from all liabilities.

[Appellant] cites *Brown v. Raquetball Centers, Inc.*, 534 A.2d 842 (Pa. Super. 1987) in support of her position that the clause at issue is ambiguous. [Appellant's] reliance on *Brown* is misplaced. In that case, the plaintiff, while exiting the shower facility, slipped on a wet floor. The plaintiff had signed a waiver indicating that he "assume[d] all risks of injury to my person and property that may be sustained in connection with the stated and associated activities in and about those premises." *Id*. The Superior Court in *Brown* held that the clear import of the above language was to relieve the defendant of liability for things that happened while the Plaintiff was participating in the "stated and associated activities" of the racquetball club, and not while simply present on the defendant's property. No such ambiguity exists here. The clause results in [Appellant] holding the [Gym and Donahue] harmless for "any and all" loss resulting from "any" act or omission []. Furthermore, [Appellant] in this case did injure herself while exercising — an activity that clearly falls within the language of both the Membership Contract and the Personal Training Agreement.

\*\*\*

[Appellant] also argues that the contract is insufficiently particular as to who was being released from liability because the Membership Agreement only uses the name "The Aquatic and Fitness Center at Jenkintown" in the exculpatory clause, where this is merely a corporate name of [Gym], the defendant in this case. This fact is not disputed. [Appellant's] suggestion that the relationship between [Gym] and The Aquatic and Fitness Center at Jenkintown is never addressed in the membership agreement is refuted by the language of the Agreement itself: the first column of the agreement contains the phrase "Aqua Hab d/b/a "The Aquatic and Fitness Center at Jenkintown." A reasonable person reading the contract she is about to sign, therefore, would be on notice as to the relationship between these two names and would understand that that clear import of the language is to relieve defendants of liability.

This Court also agrees with [Gym and Donahue] that because The Aquatic and Fitness Center at Jenkintown is merely a corporate name of Aqua Hab, L.P., and because a corporation operating under a corporate or fictitious name may validly enter into contracts, the Membership Agreement clearly relieves [Gym and Donahue] of liability, both under the law and under the terms of the contact.

As to the Personal Training Agreement, [Appellant] presents a list of nine reasons why she feels the language of the contract is not sufficiently precise. For example, [Appellant] suggests that it is "not clear that the contract refers to the Aquatic and Fitness Center", despite the contract having been presented to [Appellant] on letterhead bearing that exact name, and despite the fact that the last words of the exculpatory clause are "I release The Aquatic & Fitness Center and any personal trainer operating on its premises from all liability."

[Appellant] also suggests that a plain reading of the contract would leave one with the impression that the exculpatory clause only applies [to] injuries connected to use of equipment. To support this suggestion, [Appellant] cites the second sentence of the clause, which does relate to equipment use. [Appellant] neglects to note that this sentence begins with the word "Furthermore" and comes after the sentence that reads "I accept responsibility for any accidents and/or injuries that may be a direct or indirect result of participating in a training program." [Appellant] is therefore correct that the sentence she cites relates to equipment, there being a separate sentence relating to incidents "directly or indirectly" related to personal training.

[Appellant's] reasons as to why she feels the contract is unclear, many of which are directly refuted by the record, are not a sufficient basis for this Court to invalidate the exculpatory clauses at issue on the basis of drafting ambiguities.

[Appellant] also argues that the contracts at issue are contracts of adhesion because they unreasonably favor the drafter and because she had no meaningful choice with regard to acceptance of the contractual provisions. This Court disagrees.

Courts have consistently held that an exculpatory agreement between private parties for a voluntary, recreational activity is not a contract of adhesion under Pennsylvania law. Where each party is free to participate or not participate in an

activity, and where a plaintiff is under no obligation, economic or otherwise, to engage in a particular activity, a contract that has "all the hallmarks" of one of adhesion is nonetheless enforceable. *Chepkevich*, 2. A.3d at 1190. [FN6: [Appellant] argues that because only three Justices participated in the majority opinion, it is not binding on this Court. Even if this were true, it is instructive and consistent with the numerous other trial and appellate court decisions relating to contracts for recreational activities.]

This Court certainly appreciates that a regular fitness routine is an admirable habit and is probably personally satisfying to many people. However, [Appellant] makes no attempt to argue that attendance at a fitness facility falls closer to employment or housing than skiing or other sports on the spectrum of life's necessities. [Appellant] had the choice to participate in personal training sessions or not. [Appellant] also testified at her deposition that there were "several" other gyms or workout facilities in Jenkintown and the surrounding area that she could have driven to in under 20 minutes. This Court must therefore conclude that a session with a personal trainer is essentially a recreational activity, and one from which [Appellant] could have simply walked away if she were unsatisfied with the terms of the contract presented to her.

Trial Court Opinion, 4/15/14, at 3-10. Based on applicable jurisprudence and our careful scrutiny of the record viewed in the light most favorable to Appellant, we find that the record supports the trial court's determination that Gym and Donahue are entitled to judgment as a matter of law.

Initially, Appellant contends that the agreements violate public policy because they contravene the HCA and the PLCCA. However, our review of the record reflects that Appellant has failed to properly present and develop these arguments, such that we find them waived for appellate review. Appellant did not assert violations of the HCA and the PLCCA within her original or amended complaints. ***See generally*** Complaint, 1/16/13; ***see***

*also generally* Amended Complaint, 2/15/13. Indeed, Appellant concedes as much in her reply brief. **See** Reply Brief of [Appellant], at 7-8 ("[Gym and Donahue are] correct in that [Appellant's] complaint sounds in negligence. [Gym and Donahue are] also correct that '[A]ppellant raises these **new claims** not in an amendment to her complaint.'") (emphasis supplied). More importantly, Appellant did not raise the alleged HCA and PLCCA violations within her answer in opposition to Appellant's motion for summary judgment, as required by our rules of civil procedure governing motions for summary judgments. **See** Pa.R.C.P. Rule 1035; **See Walsh v. Borczon,** 881 A.2d 1, 5 (Pa. Super. 2005) ("Because, under [Pa.R.C.P.] Rule 1035.3, the non-moving party must respond to a motion for summary judgment, he or she bears the same responsibility as in any proceeding, to raise **all defenses or grounds for relief at the first opportunity.** A party who fails to raise such defenses or grounds for relief may not assert that the trial court erred in failing to address them[.]") (emphasis supplied). Indeed, the trial court remarked that while Appellant asserted generally "that the clauses violate public policy," Appellant did not "**unpack this assertion except to argue that the clauses are contracts of adhesion**." Trial Court Opinion, 4/15/14, at 4 n.2 (emphasis supplied).

Significantly, within her appellate brief, Appellant fails to support her PLCCA argument with any PLCCA related jurisprudence, relying instead on citations to the PLCCA and the PLCCA's preamble. **See** Appellant's Brief at 24-31; 42-43. Moreover, Appellant's citations to a 1993 non-binding

Eastern District of Pennsylvania case, and to a 2009 Pennsylvania Supreme Court case, are deficient because they only assert general propositions of law. **See id.** at 30 and 42. Likewise, Appellant's HCA discussion fails for lack of development. Appellant only cites to the HCA and a common pleas action which does not pertain to the HCA. **See** Appellant's Brief at 40-41; **see also Giant Food Stores, LLC v. THF Silver Spring Development, L.P.,** 959 A.2d 438, 444 (Pa. Super. 2008) (finding waiver where appellant failed to cite jurisprudence in support of its argument).

Waiver notwithstanding, Appellant's contentions fail because "[c]ontracts against liability, although not favored by courts, violate public policy only when they involve a matter of interest to the public or the state. Such matters of interest to the public or the state include the employer-employee relationship, public service, public utilities, common carriers, and hospitals." **Seaton v. East Windsor Speedway, Inc.,** 582 A.2d 1380, 1383 (Pa. Super. 1990). The instant contracts do not pertain to such relationships or matters, and we do not find that they violate public policy.

We further find that the contracts, and the exculpatory language contained therein, were executed between private entities regarding their own affairs, and while each party was a free bargaining agent. We agree with the trial court's rationale that the contracts between Appellant, Gym, and Donahue did not constitute contracts of adhesion. **See** Trial Court Opinion, 4/15/14, at 9-10. Appellant was "free to participate or not to participate" in fitness activities at Gym's facilities and in personal training

- 13 -

with Donahue, and Appellant was "under no compulsion, economic or otherwise, to engage" in those activities or to execute the agreements with Gym or Donahue.  *Valeo v. Pocono Intern. Raceway, Inc.,* 500 A.2d 492, 493 (Pa. Super. 1985); *see also Chepkevich,* 2 A.3d at 1190 (noting "contracts executed in the course of voluntary participation in recreational activities have not been declared unenforceable" as contracts of adhesion).

Moreover, Appellant concedes that "[u]nder Pennsylvania law, the exculpatory language must meet the high burden of spelling out the intentions of the parties with the 'greatest' of particularity."  Appellant's Brief at 16, *citing Topp Copy Products, Inc.,* 626 A.2d 98, 99 (Pa. 1993).  We find that the agreements between Appellant, Gym, and Donahue met this requirement.  The exculpatory language in the membership application/contract, which Appellant signed, stated Appellant "accept[ed] full responsibility" for her "use of any and all … facility … or service whatsoever, owned and operated by the Aquatic Fitness Center at Jenkintown, or while engaging in any … exercise," and doing "so at [Appellant's] own risk."  Membership Application/Contract, 5/26/04, at 1.  Appellant further specifically agreed to hold Gym, "its partners, shareholders, directors, officers, employees, representatives, and agents, harmless from any and all loss, claim, injury, damage, or liability sustained or incurred by [Appellant], resulting from any act or omission of an officer, employee, representatives, owners and agents and/or any of the affiliated companies hereunder[.]"  *Id.*  The agreement expressly stated that

Appellant had "read the agreement including the terms and conditions on the reverse side of this application." *Id.* Appellant's signature "constitute[d] full acceptance of this agreement including the terms and agreements set forth here[.]" *Id.* The language in the personal training contract, which Appellant executed, "acknowledge[d] that there are risks involved in any physical training program", and Appellant agreed that she "accept[ed] full responsibility for any accidents and/or injuries that may be a direct or indirect result of participating in a training program." Personal Training Contract, 5/26/11, at 1. Significantly, Appellant expressly "release[d] The Aquatic & Fitness Center and any personal trainer operating on its premises from all liabilities." *Id.* The foregoing agreements, including the exculpatory language set forth therein, support the trial court's grant of summary judgment in favor of Gym and Donahue.

Contrary to Appellant's arguments, the record and applicable case law viewed in the light most favorable to Appellant, reflects that the contracts which Appellant executed include exculpatory language which expressed with the greatest of particularity, and in clear and unambiguous terms, that Appellant was relieving Gym and Donahue of any and all liability regarding any acts or omissions. The contracts are not against public policy, involve private parties regarding their own affairs, and are not contracts of adhesions. Accordingly, we find that the trial court did not err or abuse its discretion in determining that Gym and Donahue were entitled to judgment as a matter of law. ***Zimmer v. Mitchell and Ness,*** 385 A.2d 437 (Pa.

Super. 1978) (exculpatory clause with broad language of "any liability" deemed valid, not ambiguous, and to include negligence); *see also Beck-Hummel, supra,* at 1274; *Nissley v. Candytown Motorcycle Club, Inc.,* 913 A.2d 887, 890 (Pa. Super. 2006) (exculpatory clause deemed valid where upon acknowledging the risks inherent in the defendant's business, appellant signed waiver releasing defendant of liability).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2015