**Catherine Elizabeth WALSH, Appellant**

v.

**Dennis BORCZON, MD, Saint Vincent Hospital.**

Superior Court of Pennsylvania.

Argued March 1, 2005.
Filed July 11, 2005.

Mark F. Fischer, Pittsburgh, for appellant.

Francis J. Klemensic, Erie, for Borczon, appellee.

John M. Quinn, Jr., Erie, for Saint Vincent Hospital, appellee.

Before: FORD ELLIOTT,
MUSMANNO, and LALLY–GREEN, JJ.

OPINION BY FORD ELLIOTT, J.:

¶ 1 This appeal asks us to determine the scope of the Mental Health Procedures Act ("MHPA" or "the Act"), 50 P.S. §§ 7101–7503, as applied to the facts of this case; whether Catherine Elizabeth Walsh ("patient") has pled facts sufficient to withstand Dennis Borczon, M.D.'s ("physician's"), and St. Vincent Hospital's ("hospital's") motions for summary judgment based upon the qualified immunity the Act affords mental health care providers unless they have committed gross negligence; and whether patient has waived her challenge to physician's claim to a qualified immunity under the Act by failing to raise that argument in opposition to physician's motion for summary judgment. For the reasons that follow, we affirm.

¶ 2 The trial court has set forth the facts underlying this appeal:

[Patient] had an extended history of mental illness and sought treatment from [physician] and other mental health providers, consisting of both inpatient and outpatient treatment and drug therapy, over the course of many years. In early July of 1998 [patient] discovered she was pregnant and attempted to contact [physician] to determine whether she should discontinue her medications in light of the pregnancy. A Psychiatric Support Services contact sheet dated July 8, 1998 notes that she in fact had discontinued her medications due to the pregnancy.[Footnote 1] This resulted in an exacerbation of her mental condition and delusions that there was something alien in her body that focused on her fetus.

According to [patient], she sought help from a combination of mental health providers including both defendants during the period when she discontinued her medications and her symptoms worsened. [Physician] was on vacation at this time and could not be reached, but her records reflect that Dr. Stephen Mory of St. Vincent Community Mental Health Center was consulted in his absence and recommended that she refrain from taking the medications until she could consult with [physician]. On July 22, 1998, [patient] was admitted to St. Vincent Hospital (hereinafter [hospital]) for inpatient psychiatric treatment. Records indicate that Dr. Ann McDonald was the primary physician responsible for her treatment at [hospital], and that [patient] informed her that she was pregnant. On July 23, 1998, [patient] was discharged from [hospital] as unimproved.[Footnote 2] [Patient] failed to attend a follow-up appointment with [physician] scheduled for July 31, 1998. On August 6, 1998, she terminated her pregnancy. Thereafter, she resumed taking her medications and as her condition improved she suffered significant mental trauma due to her decision to undergo an abortion.

After initiating her case with a Writ of Summons, filed July 6, 2000, [patient] filed her Complaint on September 28, 2000, alleging negligence on the part of the defendants that ultimately resulted in the termination of her pregnancy and severe mental trauma due to her religious convictions.[Footnote 3] [Physician] and [hospital] each filed an Answer and New Matter, on April 24, 2001 and May 9, 2001 respectively, asserting immunity based on the Mental Health Procedures Act (hereinafter 'MHPA'), 50 P.S. 7101 *et seq.* A prolonged discovery

period then ensued. On April 29, 2004, [hospital] filed a Certification II, and a hearing was scheduled for May 25, 2004. At the hearing, plaintiff's counsel informed the Court that her expert, Dr. Stotland, was no longer participating in the case due to retirement.[Footnote 4] The Court subsequently issued an order listing the case for the June 2004 Trial Term, and requiring the plaintiff to provide the defendants with her pre-trial narrative and the report of her substituted expert by June 4, 2004. A pre-trial conference was scheduled for June 7, 2004.

On June 4, 2004, three days before the scheduled pre-trial conference, [physician] and [hospital] each filed a Motion to Exclude Expert Testimony and/or Motion for Judgment on the Pleadings and/or Motion for Summary Judgment. Because the pre-trial conference was already scheduled, argument on the motions took place at that time. During the conference plaintiff's counsel did not dispute the applicability of the MHPA with regard to either defendant. Instead, he argued that the evidence of record was sufficient to support a claim for gross negligence. Also at that time, both defendants objected to four new theories of negligence contained in the report of plaintiff's second expert, as they were made well beyond the statute of limitations. As reflected in the Court's June 11, 2004 Memorandum Opinion, the plaintiff ultimately agreed to withdraw all assertions of error not alleged in her initial expert's reports. Thereafter, the thrust of plaintiff's counsel's argument was that she should be permitted to file a second Amended Complaint to assert gross negligence in order to overcome the limited immunity provided under Section 7114 of the MHPA.

On June 9, 2004, plaintiff's counsel filed a number of pleadings including a Motion for Leave to File Amended Complaint, yet *none* disputed applicability of the immunity provisions of the MHPA with respect to either defendant. By Order dated June 11, 2004, this Court denied [patient's] Motion for Leave to File Amended Complaint based on the expiration of the statute of limitations, and granted each defendant's Motion for Summary Judgment.

[Footnote 1:] While the parties dispute whether the plaintiff was in fact advised by [physician] to discontinue her medications or did so on her own, [patient] asserted that she did stop taking her prescribed medications about that time.

[Footnote 2:] [Hospital] asserts that this was done against medical advice due to the patient's desire to be discharged.

[Footnote 3:] The Complaint was later amended on April 20, 2001, after the plaintiff retained new counsel.

[Footnote 4:] The plaintiff initially listed Dr. Nada Stotland as her expert witness in discovery materials, and the doctor provided expert reports regarding [physician], dated November 6, 2001, and [hospital], dated February 15, 2002. Thereafter, the defendants were informed that Dr. Stotland would no longer be participating in the case due to her retirement, and Dr. Lawson Bernstein would provide expert testimony for purposes of trial.

Trial court opinion, 8/31/04 at 1–4 (footnote omitted).

¶ 3 On appeal, patient raises the following issues:

I. Whether the trial court committed an error of law and/or fact in holding that 'it is undisputed that the defendants in the matters have a form of limited immunity as set forth in the Mental Health Procedures Act.'

II. Whether the trial court erred in applying the immunity provisions of the MHPA to [physician] where [patient] has plainly pled facts, and submitted experts reports, showing that [physician's] acts related to voluntary outpatient treatment and care not covered by such immunity provisions.

III. Whether the trial court abused its discretion and committed an error of law and/or fact in finding that there was no evidence presented by [patient] from which a jury could find that the [hospital and physician] committed gross negligence in their care of [patient].

Appellant's brief at 3.

¶ 4 We note first that following the trial court's entry of summary judgment, patient filed a *pro se* appeal and subsequently retained new counsel, who filed a Rule 1925(b) statement on her behalf. In that statement, patient for the first time directly raised the argument that physician's acts related in part to voluntary outpatient treatment and care and therefore were not covered by the immunity provisions of the MHPA. (Statement of Matters Complained of on Appeal, R. at 72.) In its opinion, the trial court stated:

> As explained below, assuming that the Superior Court does not find that the issues relating to [physician] are waived, it would appear that there are issues of material fact regarding applicability of the immunity provisions of the MHPA to [physician] and the resulting standard of negligence by which his actions should be evaluated.

Trial court opinion, 8/31/04 at 5. We will therefore address the waiver issue first.

¶ 5 This court recently addressed the issue of waiver in the context of a party opposing a motion for summary judgment in two cases, *Devine v. Hutt*, 863 A.2d 1160 (Pa.Super.2004); and *Harber Philadelphia Center City Office Ltd. v. LPCI Limited*

*Partnership* ("*Harber*"), 764 A.2d 1100 (Pa.Super.2000), *appeal denied*, 566 Pa. 664, 782 A.2d 546 (2001). *Devine* was a medical malpractice case to which Gordon Hutt, M.D. ("Hutt"), raised the affirmative defense of the statute of limitations. The *Devine* court relied heavily on *Harber*, *supra*, to conclude that Devine had waived claims of estoppel, agency, and/or apparent authority in response to Hutt's affirmative defense because Devine did not present those claims to the trial court, either in his reply to new matter or in his opposition to Hutt's motion for summary judgment. *Devine*, 863 A.2d at 1169–1170.

¶ 6 In *Harber*, as in *Devine*, the nonmoving party opposing a motion for summary judgment based upon an affirmative defense failed to raise claims challenging the affirmative defense, *res judicata*, either in a reply to new matter or in opposition to the motion for summary judgment. Instead, these claims, which were based on the actual scope of a previous court's order on which the defense of *res judicata* was grounded, were raised for the first time on appeal. *Harber*, 764 A.2d at 1103. LPCI therefore argued that because Harber did not argue the scope of the New York court's order in opposition to LPCI's motion for summary judgment, Harber failed to preserve the issue for appellate review. *Id.*

¶ 7 The *Harber* court extensively analyzed the change in the burden on a nonmoving party following the 1996 amendments to the Rules of Civil Procedure governing summary judgment. As the *Harber* court opined:

> In cases preceding the promulgation of Rules 1035.2 and 1035.3, we allowed presentation of arguments for the first time on appeal where the non-moving party had failed to file a response to the motion for summary judgment and the

trial court granted the undefended motion without conducting an independent review of the record. We based our decisions on the premise established by former Rule 1035 that the burden of persuasion on summary judgment remained with the moving party and that the non-moving party had no duty even to respond to a summary judgment motion. In the absence of a response, the Rule imposed a duty on the trial judge to conduct an independent review of the record to discern the movant's entitlement to judgment 'as a matter of law.' Accordingly, we addressed arguments presented for the first time on appeal because the non-moving party had no duty to present them below and because the trial court's failure to discern such points indicated a failure in the process of adjudication mandated by Rule 1035.... *See* Pa.R.C[iv].P. 1035 (rescinded Feb. 14, 1996, effective July 1, 1996).

*Harber,* 764 A.2d at 1104 (some citations and quotations omitted).

¶ 8 Noting the major distinction between prior practice and practice under the new Rules, the *Harber* court continued:

By contrast, under Rule 1035.2 and its corollary, Rule 1035.3, the non-moving party bears a clear duty to respond to a motion for summary judgment. *See* Pa. R.C[iv].P. 1035.3(a)(1), (2) (requiring non-moving party to file a response 'within thirty days after service of the motion identifying ... one or more issues of fact arising from evidence in the record controverting the evidence cited [by the movant] in support of the motion or ... evidence in the record establishing the facts essential to the cause of action'). If the non-moving party does not respond, the trial court may grant summary judgment on that basis. *See* Pa.R.C[iv].P. 1035.3(d). Clearly, Rule

1035.3 substantially attenuates the duty of the trial court as it existed under former Rule 1035 to conduct an independent review of the record. *See* Pa. R.C[iv].P. 1035.3(d).... Because, under Rule 1035.3, the non-moving party must respond to a motion for summary judgment, he or she bears the same responsibility as in any proceeding, to raise all defenses or grounds for relief at the first opportunity. A party who fails to raise such defenses or grounds for relief may not assert that the trial court erred in failing to address them.... The Superior Court, as an error-correcting court, may not purport to reverse a trial court's order where the only basis for a finding of error is a claim that the responsible party never gave the trial court an opportunity to consider....

More recently, we have reaffirmed the proposition that a non-moving party's failure to raise grounds for relief in the trial court as a basis upon which to deny summary judgment waives those grounds on appeal. Our application of the summary judgment rules in *Payton* [*v. Pennsylvania Sling Co.,* 710 A.2d 1221, 1226 (Pa.Super.1998) ] establishes the critical importance to the non-moving party of the defense to summary judgment he or she chooses to advance. *A decision to pursue one argument over another carries the certain consequence of waiver for those arguments that could have been raised but were not.* This proposition is consistent with our Supreme Court's efforts to promote finality, and effectuates the clear mandate of our appellate rules requiring presentation of all grounds for relief to the trial court as a predicate for appellate review.

*Id.* at 1104–1105 (some citations omitted) (emphasis added). *Accord Devine,* 863 A.2d at 1169–1170.

¶ 9 Patient in this case claims two major distinctions between *Harber* and the facts at issue herein. First, as previously noted, patient, unlike the non-moving parties in *Devine* and *Harber*, did deny physician's defense of limited immunity under the MHPA in her reply to new matter and demanded strict proof at the time of trial. (Appellant's brief at 16.) More importantly, patient claims she pled sufficient facts, both in her amended complaint and in her expert's report, to indicate that physician's acts and omissions related to voluntary outpatient treatment, which is not subject to the MHPA. (*Id.* at 16–17.) Thus, according to patient, the trial court committed an error of law by granting summary judgment based upon nothing more than physician's bald allegation that he was entitled to the limited immunity the MHPA provides. (*Id.* at 17.) Instead, according to patient, if the trial court had read the Act and read her pleadings, it would have recognized that, as a matter of law, the Act did not apply to physician under the facts of this case. (*Id.*)

¶ 10 We recognize the distinctions patient attempts to draw between this case and *Harber*. Nonetheless, it is undisputed that the only argument patient presented in opposition to both physician's and hospital's summary judgment motions was that she had pled sufficient facts to present a jury question as to whether both defendants' acts and omissions constituted gross negligence. Patient did not direct the trial court to places in the record where she allegedly raised the purported inapplicability of the MHPA to physician until she filed her Rule 1925(b) statement, a point at which the trial court no longer had jurisdiction to consider the argument.

¶ 11 If we were to adopt patient's analysis, we would, in effect, thereby permit a reversion to prior practice, wherein "the trial court's failure to discern such points [on its own, without direction from the non-moving party] indicated a failure in the process of adjudication ..." *Harber*, 764 A.2d at 1104. While patient may or may not have pled sufficient facts to establish the inapplicability of the MHPA to physician, the Rules required her minimally to direct the trial court to places in the record at which it could find those facts and to argue the inference patient asked the court to discern from those facts. As set forth *supra*, "A decision to pursue one argument over another carries the certain consequence of waiver for those arguments that could have been raised but were not." *Id.* at 1105.

¶ 12 Having found patient's first two issues waived, we turn to her issue three, in which she claims the court erred in finding she presented insufficient evidence from which a jury could find either hospital or physician committed gross negligence in caring for patient.

¶ 13 " 'A reviewing court may disturb the order of the trial court [on appeal from a grant of summary judgment] only where it is established that the court committed an error of law or abused its discretion.' " *Downey v. Crozer–Chester Medical Center*, 817 A.2d 517, 524 (Pa.Super.2003), *appeal denied*, 577 Pa. 672, 842 A.2d 406 (2004), quoting *Murphy v. Duquesne University Of The Holy Ghost*, 565 Pa. 571, 590, 777 A.2d 418, 429 (2001) (citation omitted). " 'As with all questions of law, our review is plenary.' " *Id.*, quoting *Murphy, supra* at 590, 777 A.2d at 429 (citation omitted). " '[W]e will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.' " *Id.*, quoting *Murphy, supra* at 590, 777 A.2d at 429 (citation omitted).

¶ 14 In this case, the relevant section of the MHPA on which physician and hospital rely provides:

§ 7114. Immunity from civil and criminal liability

(a) In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences.

50 P.S. § 7114(a). Clearly in this case patient is not attempting to prove willful misconduct; therefore, her burden would be to present sufficient facts to the jury from which it could making a finding of gross negligence.

¶ 15 Our supreme court adopted this court's definition of gross negligence in *Albright v. Abington Memorial Hosp.*, 548 Pa. 268, 696 A.2d 1159 (1997):

'It appears that the legislature intended to require that liability be premised on facts indicating more egregiously deviant conduct than ordinary carelessness, inadvertence, laxity, or indifference. We hold that the legislature intended the term gross negligence to mean a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care.'

*Id.* at 278, 696 A.2d at 1164, quoting *Bloom v. DuBois Regional Medical Center*, 409 Pa.Super. 83, 597 A.2d 671, 679 (1991).

¶ 16 In the portion of the trial court's opinion set forth *supra*, that court outlined the facts upon which patient predicates her claims of negligence, which, she argues, rise to the level of gross negligence.[1] With regard to physician, the alleged violations of the standard of care include abruptly removing patient from her medications without providing increased support and monitoring; failing to respond to patient's telephone calls, inquiries, and requests for help during the time period in which her mental condition deteriorated; failing to schedule an appointment during the time patient's mental condition deteriorated; and failing to arrange for another psychiatrist or physician to cover for physician while he was unavailable.[2] (Amended complaint at ¶ 18.)

---

1. As a result, patient requested that the trial court allow her to amend her complaint a second time to add the term "gross negligence" to the various counts therein. The trial court denied the motion, however, concluding that allowing patient to amend the complaint to include claims of gross negligence would be to allow her to add a new cause of action beyond the statute of limitations. (Trial court opinion, 8/31/04 at 12–13.) Patient claimed the trial court erred in this regard in her Rule 1925(b) statement but has not raised the issue on appeal. Instead, in a footnote in her brief, patient claims it is not necessary to amend her complaint in order to overcome physician's and hospital's motions for summary judgment and therefore she does not seek review of this issue on appeal. (Appellant's brief at 27–28 n.1.)

2. Dr. Bernstein notes in his report, however, that patient had a follow-up appointment with physician on July 31, 1998, which she failed to keep. (Report of Lawson Bernstein, M.D., P.C., 5/26/04 at 2, R. at 61.)

¶ 17 The trial court, reviewing the report of patient's second expert, Lawson Bernstein, M.D. P.C., opined:

> However, the report of [patient']s second expert, Dr. Bernstein, clarified that [physician] was out of town when [patient] discovered she was pregnant. According to [patient's] expert, when [patient] discovered the pregnancy she contacted her case manager who attempted to reach [physician], and upon failing to do so consulted with Dr. Mory, of [hospital].[Footnote 8] The next day, [patient] called [hospital] to inquire as to whether she should be tapered from her medications. [Patient's] pre-trial narrative incorporates this report 'to summarize the facts and issues in contention in the herein case.' *See* Pl.'s Pre–Trial Narrative, p.1.
>
> [Footnote 8:] The report states, 'Dr. Morey (sic) (without seeing the patient) then "recommended no medication, consult [physician] on 7/13/98." '

Trial court opinion, 8/31/04 at 10.

¶ 18 With regard to hospital, patient's amended complaint asserted negligence:

> a.) In failing to recognize the severe state of mental deterioration of the [patient] and the likelihood that she would cause harm to herself or her unborn child;
>
> b.) In discharging [patient] and/or permitting her to discharge herself prior to any improvement in her mental state;
>
> c.) In failing to adequately and appropriately monitor the [patient] following her discharge.

Patient's amended complaint at ¶ 19.

¶ 19 As Dr. Bernstein observed, "The patient in question … had a longstanding history of severe & chronic psychiatric disease(s) as documented in the records. She also had a history of erratic treatment compliance, frequent symptomatic exacerbation and required multiple psychiatric hospitalizations prior to the event in question." (Report of Lawson Bernstein, M.D. P.C., 5/26/04 at 1, R. at 61.) In addition, Dr. Bernstein, after setting forth a chronology of the alleged actions and/or inactions with which patient charged physician and hospital, concluded, "In summary, this patient's acute clinical crisis, decompensation, iatrogenic withdrawal and exacerbation of pre-existing psychiatric diseases was either ignored, under-appreciated and/or mismanaged by the Drs. and facilities noted above." (*Id.* at 3.)

¶ 20 We must agree with the trial court that neither the amended complaint nor the expert report alleges " 'a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference.' " *Albright, supra* at 278, 696 A.2d at 1164, quoting *Bloom,* 597 A.2d at 679. Nor do they allege behavior on the part of either defendant that is " 'flagrant, grossly deviating from the ordinary standard of care.' " *Id.*

¶ 21 Patient relies heavily on *Albright, supra,* however, to support her position that the facts of her case are clearly distinguishable from and much more egregious than the facts of *Albright.* (Appellant's brief at 27–32.) We have carefully reviewed *Albright* and find it apposite. Without setting forth an extensive recitation of the facts in *Albright,* we observe the defendant hospital in that case knew, prior to the house fire Mrs. Albright started two days before Christmas, while smoking a cigarette during a manic-depressive episode, that Mrs. Albright had not been taking her medication; had missed her last appointment; had a breakdown, was becoming manic, and was walking around at night; had left a dinner to burn in the oven; and was chain smoking and there

were burns of unknown date on six-month-old furniture. *Id.* at 281, 696 A.2d at 1166.

¶ 22 The supreme court in *Albright* court first adopted the definition of gross negligence set forth in *Bloom, supra.* Applying that definition to the facts, the *Albright* court found that the hospital's conduct in suggesting Mr. Albright attempt to obtain an involuntary commitment and scheduling an appointment for Mrs. Albright several days after Christmas, based on the information it had, was not flagrant, grossly deviating from the ordinary standard of care. *Id.* at 282–283, 696 A.2d at 1166–1167.

¶ 23 As now Chief Justice, then Justice, Cappy opined in *Albright:*

> [T]he determination of whether an act or failure to act constitutes gross negligence is for a jury, but may be removed from consideration by a jury and decided as a matter of law only where the case is entirely free from doubt and there is no possibility that a reasonable jury could find gross negligence.
>
> To require mental health employees and their employers to defend jury trials on the issue of gross negligence where the trial judge finds as a matter of law that, at best, only ordinary negligence has been established, would gut the limited immunity provision of the Act of any meaning and unfairly subject such employees and facilities to protracted and expensive litigation.

*Id.* at 279, 696 A.2d at 1165.

¶ 24 We do not find the facts of *Albright* so far attenuated from the facts before us as to justify patient's distinction. In both cases, patients with a long history of mental illness and repeated but failed treatment attempts, coupled with a known history of non-compliance with treatment plans, purportedly fell victim to the ravages of their illnesses. In this case as in *Albright,* the facts illustrate the difficulty in treating patients who do not follow medical advice or keep appointments, or who change their minds about whether to allow intervention by mental health care providers. The legislature recognized the need to balance the right of a mentally ill individual to be free from any unnecessary restraint against that individual's need for protection from doing harm to himself or others, and therefore drafted the MHPA to afford mental health care providers a "blanket of limited immunity which protects a mental health facility such as [physician and hospital]." *Albright, supra* at 277–278, 696 A.2d at 1164. As then Justice Cappy, writing for the majority in *Albright,* observed:

> As the Superior Court below opined, at worst, the Hospital's staff exercised poor judgment.... The granting of summary judgment is particularly appropriate here in light of the intent of the Act to provide limited immunity from civil and criminal liability to mental health personnel and their employers in rendering treatment in this 'unscientific and inexact field.' *Farago v. Sacred Heart General Hospital,* 522 Pa. 410, 417, 562 A.2d 300, 304 (1989). The purpose of the Act's immunity provision is to insulate mental health employees and their employers from liability for the very determinations made by the Hospital here.

*Albright, supra* at 283–284, 696 A.2d at 1167.

¶ 25 Finally, even if we were to find in this case that hospital and/or physician were careless, lax, or indifferent, rather than that they merely exercised poor judgment as in *Albright,* we would, pursuant to the definition of gross negligence set forth *supra,* still find the *Albright* court's analysis equally applicable to the facts herein, and therefore find no error in the trial

court's grant of summary judgment as to physician and hospital.

¶ 26 Order entering summary judgment affirmed.