J-A16038-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GEORGE L. WATSON, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT ALLEN SHIPMAN, | : | |
| | : | |
| Appellee | : | No. 1304 WDA 2015 |

Appeal from the Order July 21, 2015,
in the Court of Common Pleas of Greene County,
Civil Division at No(s):  AD No 159 of 2014

BEFORE:  SHOGAN, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:               **FILED JULY 28, 2016**

George L. Watson appeals from the trial court's July 21, 2015 order granting summary judgment in favor of Robert Allen Shipman.  We affirm.

The trial court has summarized the factual and procedural history of this case as follows:

> During calendar year[s] 2008 and 2009, [] Watson operated a beef cattle farm in Waynesburg alongside Hargus Creek Road.  During the same time frame, [] Shipman operated a water-hauling business dealing, in part, with the disposal of [wastewater] from the natural gas drilling operations in Western Pennsylvania and the surrounding region.
>
> Over the course of three months in late 2008 and early 2009, [Watson] lost 21 of his cattle who died due to "unknown" causes.
>
> Although lab testing came back with negative results regarding a specific cause of death, [] Watson had every reason to suspect by March, 2011, that illegal dumping operations conducted in the area of Hargus Creek led to the death of [Watson's] cattle.

* Retired Senior Judge assigned to the Superior Court.

In March of 2011, [Shipman] was arrested and officially charged criminally *inter alia* in the matter of illegal [wastewater] disposal. [Shipman] pled guilty to those charges in February of 2012.

As developed in criminal proceedings, the illegal dumping by [Shipman] took place between the years 2003 and 2009.

[Watson] admits seeing [Shipman's] trucks and operations taking place just upstream from his own property, watching as [] Shipman's trucks deposited wastewater into Hargus Creek.

Notwithstanding this knowledge, a complaint was not initially filed in the office of the District Magistrate until December 30, 2013.

After proceeding before the Magisterial District Judge, the matter was then appealed to the Court of Common Pleas and a board of arbitrators heard the matter to a conclusion.

Trial Court Opinion, 7/21/2015, at 1-3 (citation to the record omitted).

After Watson did not prevail in arbitration, he filed a notice of appeal to the Court of Common Pleas of Greene County. Shipman filed both a motion for summary judgment and a motion for judgment on the pleadings. Relevant to this appeal, Shipman argued that Watson did not file this lawsuit within the applicable two-year statute of limitations.[1] On July 21, 2015, the trial court granted Shipman's motion for summary judgment concluding that the "statute of limitations has been exceeded and [Watson's] time for filing a claim has lapsed." *Id*. at 8. Specifically, the trial court analyzed the applicability of the discovery rule for tolling the statute of limitations in reaching its conclusion. The trial court determined that Watson reasonably

---

[1] Watson concedes that this case is governed by a two-year statute of limitations pursuant to 42 Pa.C.S. § 5524(7). Watson's Brief at 18.

should have known of the relationship between the death of his cattle and Shipman's actions no later than March of 2011; however, Watson did not commence this lawsuit until December of 2013. Accordingly, the trial court granted summary judgment in favor of Shipman. Watson timely filed a notice of appeal.[2,3]

Watson presents three issues on appeal.

> I. Did the trial court err[] by finding the statute of limitations in a tort action arising out of criminal activity begins to run on the date that the defendant is charged with the criminal activity as opposed to the day he pled or is found guilty of the criminal activity?
>
> II. In a case where the criminal activity leading to a cause of action is concealed in a normal course of conduct by a defendant is the statute of limitations tolled by the discovery rule until defendant's activity is deemed criminal in a court of law[?]
>
> III. In a case where the cause of action is not discoverable until after the injury is sustained by plaintiff and from facts unknown to plaintiff at the time of the injury should a jury determine the question of the running of the statute of limitations?

Watson's Brief at 5-6.

We set forth our standard of review from an order granting summary judgment.

> The standards which govern summary judgment are well settled. When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any

---

[2] The trial court did not direct Watson to comply with the mandates of Pa.R.A.P. 1925.

[3] Watson also filed a motion for reconsideration the same day. On September 14, 2015, the trial court denied Watson's motion.

material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion.…

*Swords v. Harleysville Ins. Companies*, 883 A.2d 562, 566-67 (Pa. 2005) (citations omitted).

We also set forth the principles of law governing the statute of limitations and the discovery rule.

The discovery rule originated in cases in which the injury or its cause was neither known nor reasonably knowable. The purpose of the discovery rule has been to exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured, so that he has essentially the same rights as those who have suffered such an injury.

As the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause….

Therefore, when a court is presented with the assertion of the discovery rules application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause. Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it. Where, however, reasonable minds would not differ in finding that a party knew or

- 4 -

should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law.

When the discovery rule applies, the statute of limitations does not commence to run at the instant that the right to institute suit arises, *i.e.*, when the injury occurs. Rather, the statute is tolled, and does not begin to run until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct. Whether the statute of limitations has run on a claim is a question of law for the trial court to determine; but the question as to when a party's injury and its cause were discovered or discoverable is for the jury.

*Fine v. Checcio*, 870 A.2d 850, 858-59 (Pa. 2005) (citations and quotation marks omitted).

Instantly, the trial court analyzed the aforementioned principles in connection with the facts of this case in the light most favorable to Watson. It offered the following.

In the case *sub judice*, it appears, based upon the inconclusive results of the lab testing, that there was at least some initial difficulty for [] Watson to make a fair determination as to any causal link between the death of his cattle and any outside forces.

We say this somewhat reluctantly given [] Watson's admissions that he observed [Shipman] interacting with the creek and his cattle actually drinking from the creek even prior to their deaths. However, whatever may be true regarding his earlier observations, the press coverage of the arrest of Mr. Shipman and the charges filed in March of 2011 clearly demonstrate that [] Watson, in fact, "discovered" this possible source of his cattle's death (though the existence of an actual link between the dumping and those deaths remains unproven to this day) by March 2011 at the latest. In fact, this is exactly what he admits in Exhibit J of his own counsel's brief.

- 5 -

Consistent with [] Watson's admission in Exhibit J, there were articles, notably from the Pittsburgh Post[-]Gazette among others, detailing [] Shipman['s] being arrested and charged in March of 2011. Yet, the complaint was not filed with the Magistrate until the end of 2013.

Trial Court Opinion, 7/21/2015, at 6-7.

Exhibit J to Watson's brief in response to Shipman's motion for summary judgment is a letter written on February 26, 2013 by Watson. That letter stated, in relevant part, the following:

On Christmas Day 2008 I found one of my cows dead. The following three months, January, February and March 2009, I lost a total of 17 cows and four 500 pound heifers. My veterinarian … [ran] all kinds of tests, [but] she was unable to make any determination as to the cause of death of the cattle.

I hired Mr. Sweeney, who hauls dead livestock, to haul most of my cattle from my property. I ask[ed] him if he noticed anything unusual about the cattle and he told me that their livers were yellow.

**Then in 2011 we found out about all the illegal dumping.** Some of the dumping took place within a mile from my farm. The trucks that were illegally dumping traveled past my farm every day and night. I feel certain that this illegal dumping is the cause of death of my cattle.

Watson's Response to Shipman's Motion for Summary Judgment, 6/1/2015, Exhibit J (emphasis added).

Watson argues that he "exercised more than a reasonable amount of diligence to determine the cause of the injury." Watson's Brief at 21. He contends that "after Shipman pled guilty and all of the details of his polluting became public[,… Watson] could make a causal connection." *Id*. at 22. However, Watson's contention is belied by his own admission. The trial

court made the following astute observations in denying Watson's motion for reconsideration on this basis.

>       While undoubtedly [] Shipman's eventual plea to the criminal charge may have enlightened [Watson] further as to the possible **merit** of his claim (if he could actually prove it) the facts of the plea disclosed nothing else he did not already know. Since knowledge of his claim (and not the merit of his claim) is the central consideration in determining the tolling of the statute of limitations any reconsideration possesses no conceivable merit. The fact remains [Watson] knew everything he needed to know at the time criminal charges were filed (he acknowledges he was aware of them) and did nothing.

Trial Court Opinion, 9/14/2015, at 2 (emphasis in original).

>       We recognize that

>       [p]ursuant to application of the discovery rule, the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue best determined by the collective judgment, wisdom and experience of jurors. Thus, once the running of the statute of limitations is properly tolled, only where the facts are so clear that reasonable minds *cannot differ* may the commencement of the limitations period be determined as a matter of law.

*Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000) (citations and quotations omitted; emphasis in original). Instantly, we agree with the trial court that "reasonable minds cannot differ" as to when Watson learned of the criminal charges, as Watson himself admitted he learned of them in 2011. *Id*. Moreover, "reasonable minds cannot differ" in concluding that Watson knew or should have known that he had a claim against Shipman at the time those charges were filed. *Id*. Accordingly, we are convinced that

the trial court did not err as a matter of law in reaching this conclusion, and Watson is not entitled to relief on this basis.

Watson next argues that the discovery rule should be extended in this case because Shipman "intentionally concealed his illegal dumping of pollution into the streams and creeks of Greene County." Watson's Brief at 30. Watson did not raise this argument in his response to Shipman's motion for summary judgment or in his motion for reconsideration; accordingly, this issue is waived on appeal. **See Walsh v. Borczon**, 881 A.2d 1, 5 (Pa. Super. 2005) ("[A] non-moving party's failure to raise grounds for relief in the trial court as a basis upon which to deny summary judgment waives those grounds on appeal.").

Finally, Watson contends that the trial court should not have heard the motion for summary judgment until he had the opportunity to conduct additional discovery. Watson's Brief at 32-34. While Watson alludes to this concept in his response to Shipman's motion for summary judgment, he does not argue what evidence was yet to be discovered as it related to the issue on summary judgment. The trial court, utilizing undisputed facts and viewing them in the light most favorable to Watson, concluded that summary judgment was proper as a matter of law. We will not disturb that conclusion.

Based on the foregoing, we affirm the order granting summary judgment in favor of Shipman and against Watson.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/28/2016</u>