J-A02020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| HEAVEN G. ORWIG, INDIVIDUALLY AND AS ADMINSTRATRIX OF THE ESTATE OF ASHER KENNETH GEE; AND RICHARD S. GEE | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : | |
| PATRICK A. SHINN; LAURA J. FLORI; DISCOUNT POOL AND SPA WORLD; LOUIS F. BARZONA; JAMES H. BECHDEL, SR.; AND LAUBSCHER POOLS, INC., | : : : : : : : | |
| v. | : : | |
| PAUL W. TONER; JENNIFER L. TONER; CHANDRA L. GEE; AND RICHARD K. GEE | : : : : | No. 1061 MDA 2023 |

Appeal from the Order Entered July 10, 2023
In the Court of Common Pleas of Clinton County
Civil Division at No(s):  126-18

BEFORE:  NICHOLS, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.:                    **FILED JUNE 20, 2024**

Appellants, Heaven G. Orwig, individually and as administratrix of the estate of Asher Kenneth Gee, and Richard S. Gee, appeal from the order entered in the Clinton County Court of Common Pleas, which granted summary judgment in favor of Appellees, Discount Pool and Spa World, Louis F. Barzona, and Laubscher Pools, Inc.  We affirm.

The trial court opinion set forth the relevant factual history of this appeal as follows:

[Appellants] and Additional Defendants Paul W. Toner and Jennifer L. Toner (the Toners) were neighbors residing in Bald Eagle Township, Clinton County, Pennsylvania. On May 24, 2017, [Appellants'] child, Asher Gee [("Decedent")], three (3) years of age, left the residence of [Appellants] and walked without supervision several hundred yards to the property of the Toners. On the Toners' property was located an above ground pool and the child entered onto the Toners' property and was later found floating and unconscious in the swimming pool, partially submerged. The child subsequently was pronounced dead. The cause of death was drowning. Defendant Patrick A. Shinn, and his then wife, Laura J. Flori, owned the property prior to the Toners. Defendants Shinn and Flori installed the above ground swimming pool on or about June 2009. The seller and installer of the pool and accessories was [Appellee] Louis Barzona, who was doing business as Discount Pool and Spa World [(collectively, "Discount and Barzona")]. The make and model of the commercially manufactured pool was a "Swim N Play-Aria." [Discount and Barzona] delivered and erected the pool, but did not complete any maintenance on the pool.

Defendant Shinn, the previous owner, finished the pool area with decking and related accessories. The decking and related accessories were designed and built by Defendant Shinn. The property was transferred to the Toners by Deed dated July 24, 2014 and thus the Toners were the owners of the property on May 24, 2017, the date of the incident.

[Appellee] Laubscher Pools, Inc. was contracted by the Toners to perform pool services and replaced the pool pump and filter equipment that was located along or near the exterior area of the pool on or about April 14, 2015 through April 17, 2015.

(Opinion and Order Granting Summary Judgment, filed 7/1/21, at 2-3).

On January 31, 2018, Appellants filed a *praecipe* for writ of summons against Mr. Shinn and Ms. Flori only. On March 26, 2018, Appellants filed a complaint that included a wrongful death claim and survival action. Mr. Shinn

and Ms. Flori did not respond to the complaint. On May 3, 2018, Appellants filed a *praecipe* to enter default judgment against Ms. Flori. On June 4, 2018, Appellants filed a *praecipe* to enter default judgment against Mr. Shinn.

Ms. Flori filed a petition to open and/or strike the default judgment on September 13, 2018. While Ms. Flori's petition was pending, Appellants filed a motion for leave to file an amended complaint joining new party defendants. By order dated December 13, 2018, the court granted Appellants' motion for leave to file an amended complaint. That same day, Appellants filed their amended complaint, which included Discount and Barzona as defendants.[1] By order entered December 18, 2018, the court opened the default judgment against Ms. Flori. Ms. Flori filed preliminary objections on January 3, 2019. Ultimately, the court sustained Ms. Flori's preliminary objections and dismissed the case against her.

On February 15, 2019, Discount and Barzona filed a *praecipe* for writ of

---

[1] The amended complaint also included James H. Bechdel, Sr. as a defendant. Mr. Bechdel had excavated the area surrounding the swimming pool prior to Appellee Barzona's installation of the pool. (**See** Amended Complaint, filed 12/13/18, at 4). On January 28, 2019, Appellants filed a *praecipe* to enter default judgment against Mr. Bechdel. Thereafter, Mr. Bechdel filed for bankruptcy. The bankruptcy court imposed an automatic stay on Appellants' claims against Mr. Bechdel. (**See** Appellants' Motion to Sever Claims against Mr. Bechdel, filed 8/19/19, at 2). By order entered November 1, 2019, the trial court permitted Appellants to petition the bankruptcy court to have the stay lifted for purposes of discovery in the instant case. Thereafter, the bankruptcy court issued a discharge order on November 22, 2019. In light of the discharge order, the trial court dismissed the case against Mr. Bechdel on July 10, 2023.

summons to join the Toners as additional defendants. That same day, Discount and Barzona filed a motion for an extension of time to join additional defendants. Discount and Barzona sought the extension "depending upon what might be learned through further discovery." (Motion, filed 2/15/19, at ¶5). The court granted the extension motion on February 20, 2019. On March 8, 2019, Discount and Barzona filed a joinder complaint naming the Toners as additional defendants.[2, 3]

On May 2, 2019, Appellants filed a motion for leave to amend their complaint. The court granted the motion, and Appellants filed their second amended complaint on May 15, 2019. Significantly, the second amended complaint added Laubscher Pools as a defendant. The parties subsequently filed responsive pleadings, and the matter proceeded to discovery. On April 15, 2021, Discount and Barzona filed a motion for summary judgment. That same day, Laubscher Pools filed a summary judgment motion. In their respective motions, Appellees argued that Appellants failed to establish a

---

[2] The Toners filed a motion for judgment on the pleadings on November 15, 2021, which the court granted.

[3] On May 2, 2019, Discount and Barzona filed a *praecipe* for writ of summons to join Chandra and Richard Gee as additional defendants. On March 10, 2020, Discount and Barzona filed a joinder complaint naming the Gees as additional defendants. In the joinder complaint, Discount and Barzona alleged that: 1) the Gees owned the house where Decedent was living at the time of the accident; 2) the Gees had custody of Decedent at the time of the accident; and 3) the Gees' inadequate supervision of Decedent contributed to the accident.

causal connection between Appellees' conduct and Decedent's entry into the pool. (**See** Discount and Barzona's Motion for Summary Judgment, filed 4/15/21, at ¶6; Laubscher's Motion for Summary Judgment, filed 4/15/21, at ¶20). In their responses to the summary judgment motions, Appellants argued that their experts' reports and the deposition testimony established a *prima facie* case of negligence and demonstrated that Appellees' actions were the proximate cause of Decedent's death. (**See** Appellants' Response to Laubscher's Summary Judgment Motion, filed 5/17/21, at 1-8; Appellants' Response to Discount and Barzona's Summary Judgment Motion, filed 5/17/21, at 1-8). By opinion and order entered July 1, 2021, the court granted summary judgment in favor of Appellees.

Appellants filed a premature notice of appeal from the orders granting summary judgment, which this Court quashed on May 6, 2022. Upon remand, the court conducted a proceeding to establish damages as to Mr. Shinn. On July 10, 2023, the court entered a verdict in favor of Appellants and against Mr. Shinn. The court awarded $10,000,000.00 to Appellants for the loss of Decedent's support and familial relationship, and it awarded another $2,960,754.70 in compensatory damages.

Appellants timely filed the current notice of appeal on July 26, 2023. On July 31, 2023, the court ordered Appellants to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellants timely filed their Rule 1925(b) statement on August 14, 2023.

Appellants now raise two issues for our review:

> Does the record contain evidence sufficient to create a genuine issue of material fact for a jury, as to whether [Appellees'] negligence caused [Decedent's] death?

> Does the Restatement (Second) of Torts 433B(3) apply to [Appellants'] claims, and shift the burden of proof regarding causation?

(Appellants' Brief at 3).

Our role in cases involving a grant of summary judgment is as follows:

> On appellate review, an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

***Valley National Bank v. Marchiano***, 221 A.3d 1220, 1222 (Pa.Super. 2019)

(quoting ***Summers v. Certainteed Corp.***, 606 Pa. 294, 307, 997 A.2d 1152,

1159 (2010)). Our scope of review is plenary. ***Pappas v. Asbel***, 564 Pa.

407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct.

2618, 153 L.Ed.2d 802 (2002).

In reviewing a trial court's grant of summary judgment,

> [w]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that

- 6 -

the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 61 (Pa.Super. 2006) (internal citations and quotation marks omitted).

"[A]rguments not raised initially before the trial court in opposition to summary judgment cannot be raised for the first time on appeal." *Rohrer v. Pope*, 918 A.2d 122, 128 (Pa.Super. 2007) (quoting *Devine v. Hutt*, 863 A.2d 1160, 1169 (Pa.Super. 2004)).

[A] non-moving party's failure to raise grounds for relief in the trial court as a basis upon which to deny summary judgment waives those grounds on appeal…. A decision to pursue one argument over another carries the certain consequence of waiver for those arguments that could have been raised but were not. This proposition is consistent with

our Supreme Court's efforts to promote finality, and effectuates the clear mandate of our appellate rules requiring presentation of all grounds for relief to the trial court as a predicate for appellate review.

*Id.* (quoting *Walsh v. Borczon*, 881 A.2d 1, 5 (Pa.Super. 2005) (emphasis omitted)).

In their first issue, Appellants insist that Pennsylvania's Uniform Construction Code and the International Building Code provide requirements applicable to the installation of pools and related equipment. These requirements include: 1) a "clear zone" of no less than thirty-six (36) inches between the barrier for a pool and any permanent structures, such as pumps and filters; and 2) that an above-ground pool wall of less than forty-eight (48) inches is insufficient, and there must be an additional barrier at least forty-eight inches above the ground. Appellants aver that Laubscher violated these codes by installing the pool's filtration and pump systems within the required clear zone. Likewise, Discount and Barzona violated these codes because the pool wall "was only 39 inches high where the subject piping and flange [for the filtration system] were installed." (Appellant's Brief at 31).

In conjunction with these code violations, Appellants emphasize that one of their experts, Dr. Andrew Rentschler, Ph.D., opined that Decedent could have climbed the filtration system or pump mechanism to enter the pool. Appellants also note that the record contains evidence that Decedent was known to engage in climbing activities. Further, Decedent's autopsy report revealed that he had contusions and abrasions on the right side of his body.

Relying on this evidence, Appellants argue

> a jury could consider [Decedent's] past climbing, … the contusion and abrasion on the right side of his body, and Dr. Rentschler's opinion regarding the manner in which [Decedent] could have climbed into the pool, and reasonably conclude that [Decedent] most likely accessed the pool via the filtration components installed on the side of a too-low pool wall, in the manner that Dr. Rentschler described—*i.e.*, that [Appellees'] negligence combined to cause [Decedent's] death.
>
> In addition, there exists sufficient evidence from which a jury could reasonably conclude that Barzona and Discount Pool's negligence alone caused [Decedent's] death. The walls of the pool are nominally 52 inches high. However, Barzona and Discount Pool installed the pool into a hillside. Due to this installation, the distance between the top of the pool wall and the ground ranged from 52 inches on the downhill side to 32 inches on the uphill side. This installation violated codes and industry standards requiring additional barriers for any pool wall lower than 48 inches.

(*Id.* at 32-33) (record citations omitted).

Appellants acknowledge that this is not "the clearest of cases where there is not the slightest doubt as to the absence of a triable issue of fact." (*Id.* at 34). Nevertheless, Appellants maintain that the circumstantial evidence created a genuine issue of material fact as to whether Appellees' tortious conduct caused Decedent's death. To the extent that the trial court criticized the experts' reports for failing to opine on the issue of causation with reasonable certainty, Appellants assert that the experts' opinions were "unquestionably competent proof of causation, and the court below erred in finding otherwise." (*Id.* at 42). Based upon the foregoing, Appellants conclude that the court should have denied Appellees' summary judgment

motions. We disagree.

In an action for negligence, a complainant must prove the defendant owed a duty or obligation recognized by law, a breach of the duty, causal connection between the defendant's breach of the duty and the resulting injury, and actual loss or damage suffered by the complainant. *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa.Super. 2005), *appeal denied*, 587 Pa. 731, 901 A.2d 499 (2006) (emphasis omitted). "The burden of proving the existence of negligence rests upon the party who has asserted it." *Schmoyer by Schmoyer v. Mexico Forge, Inc.*, 649 A.2d 705, 707 (Pa.Super. 1994). "The mere fact that an accident has occurred does not entitle the injured person to a verdict." *Rauch v. Mike-Mayer*, 783 A.2d 815, 824 n.8 (Pa.Super. 2001), *appeal denied*, 568 Pa. 634, 793 A.2d 909 (2002) (internal citations omitted).

Regarding a complainant's burden of establishing the element of causation, this Court has stated:

> Even with proof of both breach of duty as prescribed under statute and the occurrence of injury, therefore, [plaintiffs are] still obligated to show the two were linked by causation.
>
> To prove causation, a demonstration that the breach of duty was both the proximate cause and actual cause of injury [is] required. It is not sufficient … that a negligent act may be viewed, in retrospect, to have been one of the happenings in the series of events leading up to an injury. Even if the requirement of actual causation has been satisfied, there remains the issue of proximate or legal cause….
>
> Proximate causation is defined as a wrongful act which was a substantial factor in bringing about the plaintiff's harm. A

determination of proximate or legal causation therefore essentially regards whether the alleged negligence was so remote that as a matter of law, the defendant cannot be held legally responsible for the subsequent harm.

\* \* \*

A plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in plaintiff's favor. A jury is not permitted to find that it was a defendant's [negligence] that caused the plaintiff's injury based solely upon speculation and conjecture; there must be evidence upon which logically its conclusion must be based. In fact, the trial court has a duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation. Additionally, a party is not entitled to an inference of fact that amounts merely to a guess or conjecture.

*Krishack v. Milton Hershey School*, 145 A.3d 762, 765-66 (Pa.Super. 2016) (internal citations omitted). "[W]here a defendant is liable for only one of two or more equally probable causes and to say which is a mere guess, there can be no recovery[.]" *Mohar v. Shawver*, No. 471 MDA 2023, unpublished memorandum at 7 (Pa.Super. Mar. 21, 2024)[4] (quoting *Houston v. Republican Athletic Ass'n*, 343 Pa. 218, 221, 22 A.2d 715, 716 (1941)).

Moreover, the following principles apply to our analysis of an expert's opinion:

We recognize, of course, that to be competent, expert testimony must be stated with reasonable certainty. The purpose of this standard is not, however, to render proof needlessly difficult, but to avoid speculation under the rubric

---

[4] *See* Pa.R.A.P. 126(b) (stating that we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

- 11 -

of "expert opinion." Accordingly, [i]t is not enough to say that something could have happened. Anybody can guess. Expert testimony must assert that it is the professional opinion of the witness that the result in question came from the cause alleged.

***Betz v. Erie Ins. Exchange***, 957 A.2d 1244, 1258 (Pa.Super. 2008), *appeal denied*, 606 Pa. 659, 995 A.2d 350 (2010) (internal citations and most quotation marks omitted).

Instantly, the trial court granted Appellees' summary judgment motions due to Appellants' failure to supply adequate evidence establishing that Appellees' breaches of duty caused Decedent's death:

> [The c]ourt agrees with [Appellants] in this matter that circumstantial evidence may prove negligence and causation. However, there must be facts that lead to the proof of said negligence and causation. There are no facts that establish that the decedent climbed on the apparatus installed by [Appellee] Laubscher or climbed on the landscape surrounding the pool that was located in the required setback and then leaped/jumped to the pool area which hazard was made available by the work completed by [Appellees] Barzona and Discount Pool.
>
> [The c]ourt is cognizant of [Appellants'] argument that the experts of [Appellants] have produced a theory that [Appellees'] negligence could have caused the death of the decedent, a three (3) year old child. However, this expert utilizes the words "could have" and therefore, the evidence is insufficient to meet [Appellants'] burden. Further, it is well established that the opinion of an expert does not constitute proof of the existence of facts necessary to support the opinion.
>
> While an expert's opinion need not be based on absolute certainty, an opinion based on mere possibilities is not competent evidence, which means that expert testimony cannot be based solely upon conjecture or surmise; rather an expert's assumptions must be based upon such facts as

- 12 -

the jury would be warranted in finding from the evidence. Unfortunately, for [Appellants], no evidence exists that the decedent utilized the hazards that were present due to the negligence of [Appellees] Barzona, Discount Pool and Laubscher and that usage of those hazards led to the unfortunate and tragic death of decedent.

(Opinion and Order Granting Summary Judgment at 7-8) (internal citations omitted). We cannot say that the court erred in evaluating the expert reports proffered by Appellants.

The first expert report was prepared by David J. Bizzak, Ph.D., P.E.[5] Dr. Bizzak's report expressly stated that Appellants requested an opinion as to "whether any violations of building code requirements and/or the industry standard of care was a proximate cause of [Decedent's] drowning." (**See** Dr. Bizzak's Report Attached to Appellants' Response to Laubscher's Summary Judgment Motion at 1). Initially, Dr. Bizzak provided the following description of the pool area:

> The subject pool … is approximately 27 feet in diameter and is constructed in a hillside area of the lawn such that some excavation of earth was necessary to allow leveling of the pool. The sides of the pool are nominally 52 inches in height … on the downhill side of the pool, and the depth of water in the pool at the time of my inspection was 45 inches…. There is a fenced access deck to the pool located on the uphill side of the pool. This deck measures approximately 13 feet wide (parallel to the pool) and 9½ feet deep. The deck is fenced to a height of 47 inches, and there is a gate at the right corner of the deck, as viewed by a person approaching the deck.

_____

[5] Dr. Bizzak's *curriculum vitae* indicated that he received his doctorate in mechanical engineering.

(*Id.*)  Dr. Bizzak supplemented this description with photos of the pool area, which depict the pool walls, the fenced-in deck, and the filtration and pumping systems.  The report also described the drowning, indicating that Decedent "managed to climb into the pool," and "he was unable to swim and the depth of the pool was greater than his height[.]"  (*Id.* at 2).

Dr. Bizzak provided relevant observations of the scene, which included measurements of the pool wall and a description of the pump and filters that were installed within the 36-inch clear zone.  Ultimately, Dr. Bizzak provided the following opinion:

> [Decedent's] access to the pool, although unwitnessed, **could have** occurred as a result of him climbing the pool filter or chlorine feeder riser and then over the pool wall into the pool.  In addition, [it is] possible that he **could have** scaled the pool walls in areas where the height was less than 48 inches.

(*Id.* at 3) (emphasis added).

The second expert report was prepared by Dr. Rentschler.[6]  Dr. Rentschler explained that his "role in this matter was to perform a biomechanical analysis and determine possible sources of ingress for [Decedent] into the swimming pool."  (*See* Dr. Rentschler's Report Attached to Appellants' Response to Laubscher's Summary Judgment Motion at 2).  Like Dr. Bizzak, Dr. Rentschler's report includes several photos of the pool area,

_____

[6] Dr. Rentschler's report indicated that he received his doctorate in bioengineering.

- 14 -

as well as the description of Dr. Rentschler's "analyses conducted to assess [Decedent's] possible movement patters and ingress into the swimming pool." (***Id.*** at 3). According to Dr. Rentschler, Decedent possessed enough strength "to enter the incident swimming pool over the sidewall." (***Id.*** at 6). "The additional piping along the side of the pool also presented another pathway for [Decedent] to enter the pool." (***Id.***) "The pump mechanism also provided another source of ingress into the swimming pool for [Decedent]." (***Id.*** at 8).

Dr. Rentschler added that "[t]he edge of the excavated area adjacent to the short side of the swimming pool was only 24 inches from the base of the pool." (***Id.***) "Standing at this location, … had [Decedent] stepped/jumped forward toward the side of the pool with his arms extended, he would have likely contacted the pool and … rotated forward and downward into the water." (***Id.***) Thus, Dr. Rentschler provided the following conclusion:

> In conclusion, the evidence in this matter indicates that [Decedent] was capable of entering the incident swimming pool…. The available evidence indicates that there were multiple locations along the exterior of the swimming pool that would have allowed feasible access to [Decedent] to enter over the side. These opinions are based upon a reasonable degree of biomechanical certainty.

(***Id.*** at 8-9).

Here, the reports made clear that Appellees violated the applicable building codes with respect to the height of the pool walls/lack of additional barriers and the placement of the filtration and pumping systems within the 36-inch clear zone. Nevertheless, the reports stopped short of opining that

- 15 -

Appellees' conduct was the proximate cause of Decedent's death. As the court noted, Dr. Bizzak's report concluded that Decedent "could have" climbed over the pool's wall. Likewise, Dr. Rentschler's report simply concluded that there were "multiple locations" where Decedent could have entered the pool.[7] We reiterate that "it is not enough to say that something could have happened," and experts must assert "that the result in question came from the cause alleged." **See Betz, supra**. On this record, the court did not err in concluding that summary judgment was warranted due to the speculation that would be required for a jury to find in Appellants' favor on the issue of causation. **See Krishack, supra**. Accordingly, Appellants are not entitled to relief on their first claim.

In their second issue, Appellants argue that Section 433B(3) of the Restatement (Second) of Torts applies to this case.[8] Appellants, however, did

---

[7] In their brief, Appellants state: "Implicitly, Dr. Rentschler rejected as not feasible any means of access that may have existed, other than those that he identified in the report." (Appellants' Brief at 36). Our reading of the report, however, does not support this claim. We reiterate that the stated goal of Dr. Rentschler's report was to determine possible—not all—sources of ingress for Decedent into the pool. The report concludes with unspecific language, where Dr. Rentschler opines that there were multiple locations for Decedent to enter the pool. The report does not expressly rule out other portions of the pool area as possible points of ingress. Absent more, we disagree with Appellants' assertion that the report identified all feasible points of ingress.

[8] "Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm." Restatement (Second) of Torts § 433B(3).

not advance arguments related to Section 433B(3) in their responses to Appellees' summary judgment motions. (**See** Appellants' Response to Laubscher's Summary Judgment Motion at 1-8; Appellants' Response to Discount and Barzona's Summary Judgment Motion at 1-8; Appellants' Brief in Opposition to Motions for Summary Judgment, filed 5/17/21, at 1-19; Appellants' Sur Reply Brief in Opposition to Motions for Summary Judgment, filed 6/29/21, at 1-12). Thus, Appellants' second issue is waived. **See Rohrer, supra**. Based upon the foregoing, we affirm the order granting summary judgment in favor of Appellees.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/20/2024